FAMILY SAVINGS AND LOAN, INC.

*v.*

ARTHUR T. CICCARELLO

*v.*

WALTER L. WAGNER, JR.

(No. 13409)

Decided July 16, 1974.

*Marshall & St. Clair, James W. St. Clair* for appellant.

*Steptoe & Johnson, Edward W. Eardley, Kay, Casto & Chaney, George S. Sharp* for appellees.

CAPLAN, CHIEF JUSTICE:

In this appeal the plaintiff, Family Savings and Loan, Inc., a corporation, sometimes hereinafter referred to as Family Savings, seeks a reversal of a final judgment of the Circuit Court of Kanawha County which denied an appeal from the Common Pleas Court of said county, holding that the judgment of that court was plainly right. The plaintiff instituted an action against the defendant, Arthur T. Ciccarello, for the recovery of damages which it alleged it suffered by reason of the defendant's negligence in certifying as good and marketable the titles to certain real property.

The defendant, upon the pleadings and certain depositions, moved the court for summary judgment, alleging as grounds therefor that there was no genuine issue as to any material fact. The court granted the motion and entered judgment dismissing the complaint. It is this judgment which the circuit court affirmed and which is ultimately the subject of this appeal.

In November, 1966 Family Savings retained Arthur T. Ciccarello, an attorney, to make a search of the records in

the office of the clerk of the county court for the purpose of determining the legal status of the titles to certain lots in the City of Dunbar. These properties are designated as lot Nos. 57 and 63 of Section 4, Reservoir Hill, Union District, Kanawha County. Pursuant to that employment, the defendant, on December 6, 1966, accepted from Walter L. Wagner, Jr., an attorney, a certificate in which the latter certified as good and marketable the titles to the above lots. Relying on the certification by Mr. Wagner, the defendant, on December 19, 1966, similarly certified such titles to Family Savings. In his deposition, Mr. Ciccarello acknowledged that his certification of title was made without having examined the records in the clerk's office and that he had relied entirely on the certificate of Mr. Wagner. It was reflected in the depositions of both attorneys that the practice of relying on another attorney's certification of title was a fairly common practice among members of the bar in Kanawha County.

As alleged in its complaint, Family Savings, in reliance upon the title report submitted to it by the defendant, made a loan to Margaret M. Duncan, the prospective purchaser of the lots in the sum of $12,129.00, for which it received her note secured by a deed of trust on lot No. 57, and a loan in the same amount, with a note and deed of trust on lot No. 63. The borrower made payments on the loans until July, 1968. Upon default, Family Savings employed counsel other than Mr. Ciccarello to handle the foreclosure pursuant to the deeds of trust.

During the procedures followed by its counsel, it was for the first time reported and made known to Family Savings and Loan that the deed conveying the subject lots from an agency of the United States government to All-state Realty Company, the predecessor in title to plaintiff's borrower, contained the following stipulation:

> "*Special Use Limitation.* The Grantee convenants and agrees that the improvements located on the land will be removed at the expense of the Grantee within 6 (six) months following the date

of this deed, and that if the Grantee or his successors or assigns of the property hereby conveyed shall fail to observe said covenants, the property hereby conveyed shall revert and the title thereof shall be revested in the Grantor herein or his successors or assigns."

Neither the title opinion of attorney Ciccarello nor the one from attorney Wagner made any mention of the above "Special Use Limitation".

In his deposition Mr. Wagner testified that pursuant to the special use limitation contained in the deed, the houses had been severed from their foundations, were moved from the lots and were no longer a part of the land. He further stated that in his opinion such severance of the houses·from the land did not affect the marketability of such properties.

The plaintiff alleges that by reason of the removal of the houses its security for the loans is now worthless; that the debtor who executed the deeds of trust has left the state; and that by reason of the defendant's negligence in the conduct of his title examination of the subject properties, the plaintiff has lost the amounts of $11,926.85 on Lot No. 63 and $11,928.51 on Lot No. 57.

Subsequent to the institution of this action by Family Savings, the defendant, on June 5, 1969, impleaded Walter L. Wagner, Jr., as a third-party defendant. In this third-party complaint Mr. Ciccarello alleged that he "engaged the services of the third-party defendant, Walter L. Wagner, Jr., to make a search of the records * * * insofar as said records pertain to Lots 57 and 63 * * * and to determine the legal status of the title to said lots." He further alleged that Mr. Wagner certified to him that the titles to the lots were good and marketable and that upon the strength of and in reliance upon said report he certified the titles to the plaintiff. Therefore, says the defendant and third-party plaintiff, Arthur T. Ciccarello, if Family Savings has suffered damage by reason of his title report, "then such damage is the direct result of the failure on the part of the third-party defendant carefully to examine

said title diligently and report any and all defects therein." Consequently, Mr. Ciccarello claims that he is entitled to indemnity from Mr. Wagner, the third-party defendant, "for any loss he may be compelled to pay as a result of said damage, if any such may exist."

As herein noted, the common pleas court granted the defendant's motion for summary judgment and dismissed the complaint. It is from the judgment of the circuit court affirming such dismissal that this appeal is prosecuted.

The principal question presented for resolution on this appeal is novel to our jurisdiction, namely: When does the statute of limitations begin to run in a case against an attorney who submits a defective certificate of title? Preliminary questions to be answered are: (1) Was this action instituted in contract or in tort; and (2) What is the appropriate statute of limitations to be applied in this case?

The significance of whether the action was brought in contract or in tort is made clear by a consideration of the various statutes of limitations. If the action is instituted for a breach of contract, Code, 1931, 55-2-6 applies. Basically, that statute provides that an action on a contract shall be brought within five or ten years "next after the right to bring the same shall have accrued." The ten year statute applies to written contracts; the five year statute applies to any other contract, expressed or implied. Clearly, if, as contended by the plaintiff, this statute were applicable the institution of its action was timely.

On the other hand, if the action in the instant case were brought in tort, Code, 1931, 55-2-12, as amended, would apply. Thereunder, any action for personal injuries or property damages shall be brought within two years "next after the right to bring the same shall have accrued"; and "within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been

brought at common law by or against his personal representative." Inasmuch as the damage alleged to have been suffered in this case cannot be characterized as personal injuries or property damages, it follows that the action falls in the latter category. Therefore, if it is determined that the action was brought within one year next after the right to bring the same shall have accrued, its institution was timely.

Although the instant action could have been brought in contract, alleging that the defendant breached the obligations of his employment, an examination of the complaint leads us to believe that the plaintiff sought recovery in tort. A contract may have been implied in the complaint when the plaintiff alleged that he engaged the services of the defendant, however, there was no express charge of breach of contract or any further reference to the contract in the complaint. Rather, the plaintiff used words and charges in his complaint that sound exclusively in tort. He charged that the defendant "negligently, carelessly, and unskillfully conducted his title examination * * * and did not use proper diligence". These words connote charges of tort liability. The very basis for the action was the charge of negligence against the defendant.

In *Carter v. Willis*, 145 W.Va. 779, 117 S.E.2d 594 (1960), the plaintiff sued the water company for its failure to supply water to him. The Court noted that Carter could have sued in contract but chose to sue in tort on the basis that Willis negligently failed to comply with the terms of the contract. The Court held that the plaintiff could choose his action and that the appropriate statute of limitations would be applied. Likewise, the plaintiff in the instant case chose an action in tort and is subject to the one year statute under Code, 1931, 55-2-12 (c), as amended. See also *Lovings v. Norfolk & W. Ry. Co.*, 47 W.Va. 582, 35 S.E. 962 and 6 M.J., *Election of Remedies,* Section 6.

We come now to the principal question. When does the statute of limitations begin to run in this case? It is the contention of the defendant that the statute begins to run at the time the negligent act complained of was com-

mitted; in other words, at the time of the delivery of the certificate of title. The plaintiff asks this Court to adhere to and apply the "discovery rule". Its position is that the statute of limitations should not begin to run at the time of the delivery of the certificate of title, but rather at the time the defect in the title was discovered or, by the exercise of reasonable diligence, should have been discovered. The certificate of title was delivered by the defendant to the plaintiff on December 19, 1966. The "Special Use Limitation", which the plaintiff contends constitutes a defect in the title, was first brought to the plaintiff's attention in July, 1968. This action was instituted on May 28, 1969.

Having hereinbefore decided that the one year statute of limitations is applicable, we must now determine when that statute began to run. If, as contended by the defendant, it began to run at the time of the delivery of the certificate of title, the action would be barred. If, on the other hand, the statute did not begin to run until the alleged defect in the title was discovered by the plaintiff, the institution of the action was timely.

The defendant asserts, and with much justification, that his position reflects the majority rule in this country. See Annot., 18 A.L.R. 3d 996, 1012 (1968); 7 AM. JUR. 2d, *Attorneys at Law,* Section 186 and the many cases cited therein. Numerous cases cited by the defendant relate in a general way to legal malpractice and do not relate specifically to the instant problem. For example, *Shelly v. Hansen,* 244 Cal. App. 2d 210, 53 Cal. Rptr. 20 (1966) involved an action against two attorneys for their failure to institute a timely suit against a third party. In *Chavez v. Carter,* 64 Cal. Rptr. 350 (1967), the attorney failed to timely file an interlocutory decree of divorce. The court in *Fox v. Jones,* 4 Tex. App. Civ., Case 48, 14 S.W. 1007 (1889) held that the statute began to run from the breach of professional duty. That case concerned the failure of an attorney to bring a timely action on the plaintiff's promissory note.

We are inclined to agree with the defendant that it is the majority view in this country that as a general proposition the statute of limitations begins to run from the date of the commission of the act of professional malpractice rather than from the date of discovery. However, we do not agree with the defendant's cavalier dismissal from consideration the cases which subscribe to the so-called minority view. We do not equate an "overwhelming number of cases", as expressed in the defendant's brief, with justice and right.

This Court on several occasions has considered the basic issue involved in this case, although the specific question has not been determined. In *Morgan v. Grace Hospital, Inc.,* 149 W.Va. 783, 144 S.E.2d 156 (1965), the Court was called upon to decide when the statue of limitations began to run for alleged medical malpractice. The same arguments were forwarded, the defendant claiming that the statute began to run at the time of the physician's negligent act and the plaintiff asserting that it should run from the time of the discovery of the wrong or by the exercise of reasonable diligence at the time such wrong should have been discovered. As noted in *Morgan,* since the statute does not specify, we are called upon to construe the phrase "within one year next after the right to bring the same should have accrued."

Overruling *Baker v. Hendrix,* 126 W.Va. 37, 27 S.E.2d 275 (1943) and *Gray v. Wright,* 142 W.Va. 490, 96 S.E.2d 671 (1957), the Court, in *Morgan v. Grace Hospital, Inc., supra,* held that in a case where a physician negligently failed to remove a sponge from the plaintiff's abdomen, placed there in connection with a surgical operation, the statute of limitations does not begin to run against the plaintiff's cause of action until she learns or by the exercise of reasonable diligence should have learned of the presence of the sponge in her abdomen. As indicated above, the *Morgan* decision constituted a departure from former holdings of this Court in medical malpractice cases. There, too, it was asserted that under the majority

view the statute began to run when the wrong was committed.

In rejecting that view our Court said: "We believe that the Court in this respect is committed to a rule which is unrealistic and cruelly harsh and a rule which places a burden upon the wronged plaintiff which he or she would rarely, if ever, be able to carry. * * * We believe that the 'discovery rule' * * * represents a distinct and marked trend in recent decisions of appellate courts throughout the nation and that it is in harmony with the rule announced by this Court in the decisions involving subterranean coal mining operations." Cited were *Petrelli v. West Virginia-Pittsburgh Coal Co.,* 86 W.Va. 607, 104 S.E. 103 and *Knight v. Chesapeake Coal Co.,* 99 W.Va. 261, 128 S.E. 318, in which cases the Court applied the "discovery rule" to the mining of coal, thereby offering greater protection to the owner of coal.

We adhere to the reasoning employed in *Morgan* and apply it to the instant case. Although, as asserted by the defendant, the Morgan decision applying the "discovery rule" was restricted to cases involving foreign objects negligently left in a patient's body, we discern no valid reason why the principle expressed therein should not be extended when such extension is designed to promote justice and right. *Morgan* extended the rule to escape one which was "unrealistic and cruelly harsh." For the same reason we extend the *Morgan* rule to cover the instant case.

The critical inquiry in resolving the question raised on this appeal is when the cause of action accrued. Commenting on the time that the right to maintain an action accrues, the court, in *Fort Myers Seafood Packers, Inc. v. Steptoe and Johnson,* 381 F.2d 261, 18 A.L.R.3d 974, (1967), said: "* * * In ordinary negligence actions, this means the time when the plaintiff suffers injury." Then, quoting from another case, the court continued " 'The action against Gichner plainly is based on negligence, sounds in

tort, and did not accrue until injury resulted from the alleged negligence.' " Finally, the court said:

"Several state courts have adopted a special rule that time begins to run against a claim for malpractice when the defendant does the act that afterwards results in injury. Other courts have applied the general rule that time begins to run when the plaintiff suffers injury. The District Court chose the special rule. We see no good reason for drawing such a distinction between malpractice suits and other negligence actions."

In *Mattingly v. Hopkins,* 253 A.2d 904 (Md. 1969) a case involving a negligent act of a surveyor, the court held that the cause of action accrued when Mr. Mattingly, the purchaser of the professional service, discovered the discrepency. This language appeared in *Mattingly*: "We see no basic distinction between the application of the 'discovery rule' in a medical malpractice case and in the instant case * * *." Judge Northrop, in *Southern Maryland Oil Company v. Texas Company,* 203 F. Supp. 449 (1962) commented as follows: "* * * the running of the statute commenced, not from the date of the first prescription, but from the time when the first trivial injuries were noted."

Applying the principle expressed in *Morgan* to the instant case we hold that the damage occurred to the plaintiff when it discovered that the title was defective and that the right to bring the action accrued at that time. Although this may reflect the minority rule, we believe that it is the better reasoned rule, that the trend of modern decisions is moving toward its adoption and we adhere to it. *Williams v. Polgar,* 43 Mich. App. 95, 204 N.W.2d 57 (1972); *Hillock v. Idaho Title & Trust Co.,* 22 Idaho 440, 126 P. 612 (1912); *Mattingly v. Hopkins, supra; Mumford v. Staton, Whaley & Price,* 255 A.2d 359 (Md. 1969); *Fort Myers Seafood Packers, Inc. v. Steptoe and Johnson, supra.*

In *Hillock, supra,* wherein the court after examining numerous authorities, concluded that the better rule was

that the statute began to run when the defect was discovered, it was reasoned that the omission of a conveyance from an abstract would be considered fraud and that the statute would not begin to run until the fraud was discovered. As in the instant case, there was no allegation or proof of actual fraud. Fraud was inserted through the reasoning of the court. The tenor of its opinion is demonstrated by the following excerpt:

"* * * if the statute runs in favor of the abstractor from the delivery of the abstract, the company would be released long before the falsity of the abstract could reasonably be discovered by the purchaser. This would not be justice, and ought not to be the law."

The immediately above quoted language reflects our view. When a prospective purchaser of real property, through an abundance of precaution pays an attorney to examine the title to such property and for a certification as to whether the title is good and marketable or is defective, in which latter case he probably will reject the purchase, he is entitled to protection against the possible loss of such property by reason of an erroneous certification for more than one year. In the normal course, no grantee of real estate has any occasion to consider the validity of his title within the statutory period as contended for by the defendant. As stated in *Hillock* and as necessarily implied in most of the cases cited herein such an application of the statute of limitations would render a certification of title meaningless and would deprive a purchaser of real estate of the protection intended to be afforded by such certification of title. The adoption of the defendant's contention would create an unjust and inequitable circumstance which should not be sanctioned by law and such contention is rejected.

We adopt the "discovery rule" in resolving the instant case, not on the theory of fraud but on the basis of the damages having occurred when the defect in title was discovered or by the exercise of reasonable diligence should have been discovered. This then constitutes the

time when the right to bring the action shall have accrued and the time when the statute of limitations begins to run. Consequently, in the instant case the statute of limitations began to run on the day that Family Savings first learned of the "Special Use Limitation" which it alleges constitutes a defect in the title.

We do not adjudicate the issue of whether the title was rendered defective by the "Special Use Limitation" contained in a former deed. That issue must be determined in the trial court. For the reasons stated in this opinion the judgment of the Circuit Court of Kanawha County is reversed and set aside and the case is remanded for a new trial.

*Reversed and remanded.*