**In re VTN, INC. Employer No. 59–1209828, Debtor.**

**Bankruptcy No. 86–01422–BKC–SMW.**

United States Bankruptcy Court, S.D. Florida.

Feb. 20, 1987.

Laurel M. Isicoff, Miami, Fla., James Allen, Columbus, Ohio, Squire Sanders and Dempsey, for VTN, Inc.

Robert Brager, Harold Segall, Beveridge & Diamond, P.C., Washington, D.C., for Malden Public Service District.

Gilbride, Heller & Brown, P.A., Miami, Fla., for Overseas Properties.

Karon, Morrison & Savikas, Miami, Fla., for Malden Public Service District.

### ORDER ON DEBTOR'S OBJECTION TO CLAIM FILED BY MALDEN PUBLIC SERVICE DISTRICT

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on before this Court on October 23, 1986 and continued on November 7, 1986, on VTN, Inc.'s, Objection to Claim filed by Malden Public Service District, and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, it is hereby

ORDERED AND ADJUDGED as follows:

VTN, Inc. ("VTN"), the Debtor, is a design engineering firm presently located in Miami, Florida. VTN previously had offices in various other parts of the country, including one office in Charleston, West Virginia. Malden Public Service District ("Malden"), the Claimant, is the owner of a sewerage system consisting of a sewage collection system ("Collection System") and wastewater treatment plant (the "Plant") in Malden, West Virginia. In 1975, VTN was hired by Malden to design and supervise construction of a waste water treatment system (the "System"). The contract was amended twice, in February of 1976, and in January of 1977.

VTN's preliminary plan was received by the West Virginia Department of Natural

Resources ("DNR") for its review in January of 1976 and approved by the United States Environmental Protection Agency ("EPA") in September of 1976. Additionally, public hearings were held to review the preliminary plan. In October of 1976, the EPA approved a grant authorizing VTN to commence work on the design and specifications for the System. The design was approved by the DNR in September of 1977 and by the EPA in April of 1978.

The Plant was designed by VTN to comply with Malden's water quality permit (the "Permit"). The Permit, issued by the EPA and the DNR, required that the wastewater discharged from the Plant to the Kanawha River not exceed certain pollution levels, including 18 mg/1 TKN (30 day average). TKN is a measurement of the nitrogen content in the wastewater.

The design phase of the contract began in October of 1976 and concluded around April of 1978. Construction of the System commenced in April of 1978 and the System became operational in the summer of 1980.

In November of 1985, Malden filed suit against VTN in the United States District Court for the Southern District of West Virginia to recover damages arising from the improper design and inadequate construction supervision of the System. The Complaint set forth four counts: Count I—Breach of Contract; Count II—Breach of Express Warranties; Count III—Breach of Implied Warranties; and Count IV—Negligence. On May 16, 1986, VTN filed for protection under Chapter 11 of the Bankruptcy Code thereby staying the district court lawsuit. Malden filed a Proof of Claim in the bankruptcy proceeding claiming that "VTN, Inc., defectively designed and supervised construction of [sic] Malden's sewerage system." VTN filed an objection to Malden's claim, which objection is the subject of this contested matter, stating Malden's claim should be disallowed because the claim is barred by the statute of limitations and because Malden has failed to prove VTN's liability.

■ The parties have agreed that West Virginia Law shall be applied by the Court in reaching its determination. The Court finds that under West Virginia Law the applicable statute of limitations is ten (10) years; W.Va.Code §§ 55–2–6, 55–2–6a and 55–2–12. *Family Savings and Loan, Inc. v. Ciccarello*, 157 W.Va. 983, 207 S.E.2d 157 (1974). In West Virginia, a cause of action for negligence accrues when the plaintiff knew or should have known an injury has occurred. *Family Savings*, 157 W.Va. at 991. A cause of action for breach of contract accrues when the breach occurs. *Greer Limestone Co. v. Nestor*, 332 S.E.2d 589 (W.Va.1985); W.Va.Code § 46–2–725(2). Based upon the evidence presented the Court finds that the Proof of Claim was filed within ten years after any cause of action accrued and therefore the claim is not barred by the statute of limitations.

■ Malden appears to allege two grounds for recovery: breach of warranty and breach of contract. After careful scrutiny, the court finds there is no express warranty in the contract. VTN's obligations under the contract were to design the System and provide supervision during construction. The contract between Malden and VTN is clearly a contract to provide services, therefore, no claim for breach of warranty will lie. *Foster v. Memorial Hospital Association of Charleston*, 159 W.Va. 147, 219 S.E.2d 916 (1975).

■ As for the breach of contract claim, the contract provides that VTN shall be liable "in accordance with applicable law for all damages ... caused by the Engineer's negligent performance of any of the services provided under this agreement ...". The Court finds that the phrase "in accordance with applicable law," in this case means, that the negligence law of West Virginia shall apply to any dispute over VTN's services. To establish negligence, a plaintiff must show that a defendant "has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." *Lurana v. Kirdnual*, 332 S.E.2d 872, n. 17 (W.Va.1985), (quoting *Robertson v. LeMaster*, 301

S.E.2d 563 (W.Va.1983)). Thus, Malden seeks to recover damages from VTN on the theory that VTN owed Malden a duty under the contract to properly design and supervise construction of a wastewater treatment system, which duty was not properly performed, thereby constituting a breach of the contract.

Damages arising from VTN's alleged breach of contract can be divided into two categories. First, there are damages arising from alleged excess maintenance and operation costs due to the improper design of the System. Second, there are damages allegedly arising from the cost of corrective measures that Malden claims are needed to be taken in order to get the System to perform within the Permit requirements set forth by the DNR and the EPA.

Problems falling into the first category are: an excessive number of pumping stations (used to pump sewage through the Collection System where sewage cannot flow by gravity); freezing of the pressure swing absorption system (which generates the oxygen used to treat the raw sewage); manual restart of the Plant when electrical power failures occur; replacement of certain portions of the headworks structure (located where the sewage first enters the Plant); increased sludge transportation cost due to insufficiently dewatered sludge (the cost of transporting the solid waste to dump sites); excessive infiltration and inflow (water which comes into the Collection System from sources other than customers); cost of smoke testing (testing to detect leaks in the System); and lost revenue. Problems falling into the second category are: hydraulic surges (surges of water into the Plant); inadequate sludge digestion (biological breakdown of solid waste); and the absence of flow meters (measuring flow through the Plant).

■ 11 U.S.C. § 502(a) and Bankruptcy Rule 3001(f) provide that the filing of a proof of claim is prima facie evidence that a creditor's claim is valid. The trustee, or in this case, the debtor-in-possession, then must produce evidence equivalent in probative value to that of the creditor to rebut the prima facie effect of the proof of claim. However, the burden of ultimate persuasion rests with the claimant. *In re DeLorean Motor Co. Litigation,* 59 B.R. 329 (E.D.Mich.1986); *In re Wells,* 51 B.R. 563 (D.Col.1985); *In re Lampert,* 61 B.R. 785 (Bankr N.D.Wisc.1986); *In re Century Inns, Inc.,* 59 B.R. 507 (Bankr.S.D.Miss. 1986). The Court finds that VTN presented evidence of sufficient probative value to rebut the evidentiary effects of 11 U.S.C. § 502(a) and Bankruptcy Rule 3001(f).

## ALLEGED MISCELLANEOUS DEFICIENCIES

■ After reviewing the evidence and testimony presented, the Court finds that Malden has failed to meet its burden to show that it has sustained excess maintenance and operation costs due to any negligence by VTN, based on the following findings:

First, Malden claims that of the thirty-one sewage pumping stations that pump the sewage through the Collection System, twenty-five are superfluous.

A collection sewer design includes a detailed evaluation of sewer slope, depth, flow velocities, construction and operating and maintenance costs. The evaluation becomes complicated when the terrain is hilly as is the case of Malden, West Virginia. The Malden System design had to consider the West Virginia Department of Health's requirement that the slope of the sewer pipes must result in a sewage flow through the pipes of two feet per second:

VTN performed the necessary detailed evaluation and concluded that thirty-one pumping stations were needed to achieve the most cost effective design. No such detailed evaluation was performed by Malden. The Court finds Malden's analysis of the pumping station design was insufficient to convince the Court that Malden's position has merit. Thus, Malden has failed to prove it is entitled to recover operating and maintenance costs generated by the twenty-five pumping stations.

Second, Malden claims that because VTN did not design a shelter over the Pressure Swing Absorption ("PSA") system the instrumentation in the PSA system froze, requiring construction of a shelter over the PSA unit.

The PSA system generates the oxygen used by the Malden System to break down solid waste. Beginning in the winter of 1980, Malden experienced freezing in cold weather in the PSA instrument air system. To prevent the freezing, Malden built a temporary building over the PSA system. Malden claims it must now build a permanent shelter. Malden would like to hold VTN responsible for the cost of both buildings.

VTN's specifications require that the PSA system be designed for outside installation; the design specifies a dehumidifier to reduce the moisture content in the instrument air system to prevent condensation, and therefore freezing, to 40 degrees below zero fahrenheit. The PSA system specifications also provide that the PSA system winterization is the responsibility of the vendor, Union Carbide of Charleston. Based on the foregoing, the Court finds that Malden has failed to demonstrate the PSA System was negligently designed.

Third, Malden claims damages arising from the necessity of manually restarting the Plant every time the Plant shuts down due to a power interruption because the Plant was not designed to automatically restart upon restoration of power.

Union Carbide, the manufacturer of the UNOX system, (the system used in the Malden Plant) advised that the System be manually restarted to eliminate the danger of explosion. VTN followed this advice in its design. However, the Plant was designed with and has an automatic alarm and call system to summon an operator upon the loss of power to avoid the Plant being shut down for an extended amount of time. The Plant also has a standby diesel generator to provide an alternate power source. Malden has failed to prove that VTN acted negligently in designing the System in accordance with the explicit instructions of the product manufacturer.

Fourth, Malden claims VTN is responsible for the replacement of headworks equipment, such as screws, wires and piping, because, due to constant immersion, that equipment wore out sooner than expected, five or six years after placing the System in service.

VTN's design specifications for the headworks equipment are within the standards in the industry. The equipment is located at the front of the Plant, where the raw sewage first enters and is, therefore, continuously in a hostile environment. In such a location the headworks structure can be expected to corrode and wear faster than other components in the Plant. The headworks equipment is designed to operate under water, and with preventive maintenance the life of the equipment can be extended. The Court finds the expected life of the headworks equipment is from five to ten years and the headworks equipment lasted its expected lifetime. Therefore, the Court finds Malden has failed to prove it is entitled to the replacement costs of the headworks equipment.

Fifth, Malden claims it experiences higher sludge transportation costs than it should because, as a result of VTN's design, the sludge generates contains too much water.

The Court finds the Plant is presently dewatering sludge to approximately 12% solids, which, according to expert testimony, is within the accepted range for biological, aerobically digested, sludge (the type of sludge generated by the Plant). Since the sludge is being dewatered within the range the Plant was designed to dewater sludge, the Court finds Malden is not incurring any costs for sludge transportation in excess of that which could be reasonably expected.

Sixth, Malden claims VTN is responsible for the cost of treating excess water which is entering the Collection System.

Malden postulates that excess water must be entering the Collection System

through suspected breaks which occurred due to VTN's negligent design and improper construction supervision. Initially, some of the excess flow came from illegally connected roof drains to the Collection System by customers. Smoke testing has been used to detect the roof drains, and, when found, Malden has required the customer to disconnect the roof drains. It is clear that the System is experiencing higher flow in wet weather than in dry weather. However, excessive infiltration/inflow can arise from a number of causes many of which are unrelated to system design or construction. Smoke testing cannot detect many of the sources of excessive flow. However, other than smoke testing, Malden has not looked for the possible sources of infiltration/inflow.

The Court finds the design specifications for the Collection System for materials, joints, and bedding, and test specifications for infiltration and inflow to the Collection System are within accepted industry standards and the Malden Collection System met VTN's specifications when tested after construction. Malden failed to prove the source of excess inflow or that it is caused by defective design. Therefore, the Court finds Malden has failed to prove VTN negligently designed the Malden Collection System.

Seventh, Malden claims VTN is liable for the costs of the smoke testing, performed to detect sources of infiltration and inflow.

Smoke testing is an incidental routine maintenance cost which is necessary to determine homeowners' compliance with the prohibition against connecting roof drains into the Malden Collection System. VTN is not responsible for the cost of performing these tests because the cost is a normal operating expense of the system owner, Malden, and unrelated to the design of the System.

Eighth, Malden claims it is entitled to damages for revenue lost due to the System's inability to service certain customers by gravity.

Approximately seventy out of approximately thirty-five hundred users of the System are unable to be served by gravity drainage to the Collection System. Sewer line depth for the Collection System was determined based on the normal basement depth of customers in the area, which is standard sewer system design practice. These seventy customers were not connected to the Collection System by gravity because their basement levels are too low. The cost of building the Collection System deeper to accommodate these additional customers by gravity far outweighed the potential revenue to Malden from their connection to the System. Malden reviewed the design of the Collection System, and knew that for economic reasons certain customers could not be connected. The approximately 70 customers could be served by the System by using a grinder pump, the use of which is not uncommon in the West Virginia area. Malden has failed to demonstrate VTN is liable for lost revenue.

In summary, Malden has not sustained its burden to show it is entitled to damages arising out of allegedly excessive operating and maintenance costs.

## ALLEGED DEFICIENCIES RELATING TO PERMIT COMPLIANCE

After reviewing the evidence and testimony presented, the Court also finds Malden has failed to demonstrate that VTN is responsible for the cost of certain corrective actions which Malden claims are necessary to put the Plant in compliance with its Permit levels, based on the following findings:

First, Malden claims that the Plant experiences instantaneous surges which exceed design capacity. Malden claims these surges cause solids to flow over the weir (a dam-like device designed to allow water to flow over it at a certain level) and into the river, thereby raising the pollutant level in the effluent (discharge) above permit specifications. To correct this problem, Malden claims an equalization basin must be installed.

Past high pollutant levels and solids carryover are attributable to the improper operation of the clarifier (the chamber where the solid waste and water separate), allowing the sludge blanket (the solids which settle in the clarifier) to reach an unacceptable height. Additionally, Malden only operates one side of the Plant, meaning the Plant, as operated, has only one-half the capacity to accept flow from the Collection System.

The plant does experience flow surges which are, in part, attributable to cycling of the pumps in the two lift stations which collect sewage from the Collection System and pump it to the Plant. However, all waste treatment plants experience diurnal surges, and the plants are designed to deal with these diurnal surges. A major factor in high flow at the plant is the excessive infiltration/inflow which occurs in wet weather. However recent observations of the System during rainfall indicated no solids flowing over the weir. The Plant is designed to accommodate and is accommodating the flow variations which are occurring and the Plant is performing within the required Permit levels. Malden is performing under a new NPDES Permit which provides that anytime the Plant experiences an instaneous surge of sewage in excess of a certain amount, the Plant is out of compliance with the Permit. The original Permit had no such requirement nor should VTN be expected to design a system which anticipates future permit modifications. Thus, the evidence directly contradicts Malden's assertion that it must install an equalization basin so that the Plant will meet Permit limits.

Second, Malden claims that the design of the aerobic digester system is inadequate, thereby necessitating the addition of an external settling tank. Malden alleges that the addition of an external sludge settling tank would cure two problems: (1) insufficient sludge digestion time, which contributes to poor sludge dewatering and increased handling costs; and (2) low solids retention time leading to Permit violations for TKN.

The System was designed to retain the sludge in the sludge digester for about ten days. By proper operation of the sludge wasting and digesting system, Malden can achieve a design retention time in excess of ten days. The design sludge retention time for the Plant is within accepted industry standards for aerobically digested biological sludge. There are few, if any, other aerobic digestion systems which include an external settling tank. The Court finds that the Plant is achieving sludge dewatering and retention expected for a plant of Malden's design, and the data shows that the Plant is capable of meeting its TKN limit. Thus, Malden has failed to prove it requires an external settling tank because of improper design or construction supervision.

Third, Malden claims that the Plant was designed with insufficient flow meters. The meters, although desirable in a plant, are not necessary to perform the functions of the wastewater treatment plant. Many other package plants do not have these additional meters which Malden claims are so vital.

In Summary, Malden has also failed to sustain its burden to show it is entitled to payment for corrective measures.

## CONCLUSION

Malden filed a Proof of Claim for over $6,000,000.00, more than 20% of the total cost of the System. There were some initial problems with the System, which led to a series of suggestions for improvement, ranging from design changes to improved maintenance and training. In 1981–82 the Plant was not meeting its effluent limits, there were problems with solids carryover and sludge dewatering, the Collection System was experiencing excessive inflow, and plant operators were inconvenienced by the frequent power failures by the local utility. The Plant did experience problems with freezing in the PSA system, and Malden did need to replace the equipment in the headworks after five or six years of operation. However, Malden has failed to show that this litany of problems is attributable

to any negligence by VTN in its design or supervision of the construction of the System.

Earlier data and plant performance reviews indicate the Malden plant did initially have difficulty in meeting its Permit limits. However, the plant is now consistently meeting its required effluent limits without any design changes. Monthly reports filed with the DNR indicated the Plant is complying with permit levels. The Court finds that the test reports filed by Malden on a monthly basis with the DNR accurately reflect the plant's compliance with its Permit requirements.

VTN evaluated and held out for public scrutiny five different plant designs, the most cost-effective of which was selected and expressly approved by Malden, the West Virginia DNR, and the EPA. Moreover, the detailed design of the entire Plant and Collection System was specifically reviewed and approved by Malden, the West Virginia DNR and the United States EPA. It is true, as the contract provides, that EPA approval does not exonerate an otherwise negligent engineer. However the court notes that the review of VTN's design by design engineers and others at EPA, Malden and the DNR, and their approval of the design after review, is evidence which the court may consider in support of its factual finding that VTN was not negligent in its design.

In conclusion, Malden has failed to prove that the System was improperly designed or supervised or that it is otherwise entitled to any claim in this bankruptcy proceeding. Therefore, Malden's proof of claim is disallowed in its entirety pursuant to 11 U.S.C. § 502(a).