**In re HOMELANDS OF DeLEON SPRINGS, INC., d/b/a Van Hook School, Debtor.**

**Bankruptcy No. 94–4491–BKC–3F7.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Oct. 19, 1995.

Robert Altman, Patlatka, Florida, for Debtor.

Raymond R. Magley, Jacksonville, Florida, for SunBank.

Philip A. Doyle and John A. Galotto, Washington, DC, for I.R.S.

Gordon Jones, Trustee, Ponte Vedra Beach, Florida.

Jason B. Burnett, Jacksonville, Florida, for Ina Perry.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case is before the Court upon an Objection to Claim 15 of the Internal Revenue Service, filed by SunBank of Volusia County. A hearing was held on the Objection on June 8, 1995. Based upon the evidence presented at the hearing, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

The Debtor, Homelands of DeLeon Springs, Inc. (hereinafter "Homelands") is a Florida corporation, incorporated on April 12, 1988. (SunBank Ex. 2) Homelands is wholly owned by Anadan, Inc., a corporation which in turn is wholly owned by Daniel Mulholland. (Tr. at 56) Anadan was designed to be an administrative company to own other corporations owned by Mulholland. (Tr. at 56) In April of 1988, Homelands purchased the Van Hook School in DeLeon Springs, Florida, which is a residential care facility for disabled adults. (Tr. at 126) Homelands operated the Van Hook School from April of 1988 to July of 1988. (Tr. at 127) In May of 1988, Caremost, Inc., a Florida corporation was incorporated. (SunBank Ex. 1) Caremost is also wholly owned by Anadan, the holding company set up by Mulholland. (Tr. at 56) In July of 1988, Caremost assumed operation of the Van Hook School. Homelands entered into a lease agreement with Caremost to lease the Van Hook School to Caremost. (SunBank Ex. 7) According to the testimony of the office manager of Van Hook School, Bonnie Kritzmacher, Caremost was set up to be the management company of the school. All employees were employed by Caremost and their salaries were paid by Caremost. (Tr. at 128)

From 1988 onwards, Homelands owned the property consisting of Van Hook Schools and leased it to Caremost. The rent under the lease was the lesser of $21,000 per month or the sum necessary to service the mortgage debt plus rental sales tax. Since the monthly mortgage debt payment was less than $21,000, the rent was equal to the mortgage debt plus rental sales tax. There was no evidence presented that this rent was excessive or above market rate. Caremost was also obligated to pay all taxes, insurance, utility, repair and maintenance expense. (SunBank Ex. 7) In 1989, Homelands negotiated a refinance of the mortgage on the Van Hook property with SunBank. SunBank holds a first mortgage on the Van Hook School property, dated December 6, 1989, as well as a promissory note in the original principal amount of $1,650,000. SunBank still holds this note and mortgage. (SunBank Ex. 6) Homelands assigned all rents and proceeds under the lease with Caremost to SunBank, also on December 6, 1989. (SunBank Ex. 8)

Caremost also operated a residential adult care facility in Sebring, Florida known as Heritage Home. (Tr. at 55–56) Homelands also owned the Heritage Home property in Sebring, evidenced by a warranty deed dated April 14, 1988. (SunBank Ex. 9) Ina Perry holds the first mortgage on the Heritage Home property, which was acknowledged in the warranty deed. According to the testimony of Karen Brooks, executive director of Caremost, Caremost also leased the Heritage Home property from Homelands, and made the mortgage/rental payments directly to the mortgagee, Ina Perry. (Tr. at 71) However, no formal document evidencing this agreement was introduced into evidence.

From the time of its incorporation, Homelands had no employees, other than the cor-

porate officers required by Florida law. (Tr. at 138) Homelands did not maintain a bank account (Tr. at 79, 138), nor did it have its own phone number. (Tr. at 97) Homelands had no independent revenue, except for the rental payments from Caremost. (Tr. at 81) Homelands' corporate records were kept at Caremost's offices in DeLeon Springs at the Van Hook School, as were Anadan's corporate and financial records. (Tr. at 56) Homelands' corporate expenses, such as the costs of annual reports, were paid by Caremost. (Tr. at 139)

Daniel Mulholland was the "owner, Board of Directors, President" of Caremost. (Tr. at 53) In addition, he was the President and Board of Directors of Homelands. (Tr. at 55) Homelands and Caremost were only part of the businesses owned and controlled by Mulholland. He also operated Sugar Lakes Retirement Homes as a sole proprietorship, which was an assisted living facility for the elderly. (Tr. at 55) Additionally, Mulholland owned three private residences in New Smyrna, Florida. (Tr. at 58–59) All of his businesses were controlled and operated out of the Caremost offices at the Van Hook School in DeLeon Springs.

The executive director of Caremost was responsible for maintaining the books and records and financial dealings of the other businesses, as well as for Caremost. Funds were transferred among the various businesses without regard to corporate formalities and without any intention of repayment. (Tr. at 91, 122–123) Whatever cash there was in the accounts, was used to pay the most urgent bills of whatever corporation needed it. (Tr. at 91) Bills of the various corporations went unpaid, including tax debt owed the IRS by Caremost. A zero balance account was maintained which Caremost and Sugar Lakes shared. Homelands did not participate in the zero balance account because it had no revenue to contribute, and essentially, had no expenses. Since Homelands had no employees, and had assigned the proceeds of its lease with Caremost to SunBank, Homelands had no money coming in or going out.

On October 14, 1994, Homelands filed its petition in bankruptcy. The Internal Revenue Service filed its proof of claim in the amount of $127,526.65, designating on the claim that it was for Homelands, as nominee of Caremost. The claim consists of unpaid FICA taxes owed by Caremost. SunBank objected to the claim, contending that the claim was not owed by Homelands, in whose bankruptcy case the claim was filed. The IRS argues that under the theory of corporate nominee/alter ego, that the Court should hold Homelands liable for the taxes of Caremost, contending that Homelands and Caremost were corporate alter egos, which should be liable for the debts of the other. SunBank contends that they were separate corporations and that the IRS cannot hold Homelands liable for debts owed by Caremost. That is the issue before the Court.

## CONCLUSIONS OF LAW

Proofs of claim are presumed valid. Objections to claims are governed by 11 U.S.C. § 502(a) which provides that, "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, ... objects." Section 502(b) provides, "... [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount...." Federal Rule of Bankruptcy Procedure 3001(f) provides that a proof of claim filed in accordance with the rules "shall constitute prima facie evidence of the validity and amount of the claim." The burden of proof is on the objecting party to produce evidence "equivalent in probative value to that of the creditor to rebut the prima facie effect of the proof of claim. However, the burden of ultimate persuasion rests with the claimant." *In re VTN, Inc.,* 69 B.R. 1005 (Bankr.S.D.Fla.1987), *citing, In re DeLorean Motor Co. Litigation,* 59 B.R. 329 (E.D.Mich. 1986).

The basis of the proof of claim filed by the IRS in the instant case is that Homelands is a "nominee" of Caremost, and therefore liable for the tax debt of Caremost. The "nominee" or "alter ego" or "instrumentality" rule has long been used to reach the assets of

other corporate entities or shareholders by courts. *Black's Law Dictionary* 801 (6th ed. 1990) uses the terms interchangeably, explaining that "the so-called 'instrumentality' or 'alter ego' rule states that when a corporation is so dominated by another corporation that the subservient corporation becomes a mere instrument and is really indistinct from [the] controlling corporation, then the corporate veil of [the] dominated corporation will be disregarded if to retain it results in injustice." It further explains that "under this rule, corporate existence will be disregarded where a corporation ... is so organized and controlled and its affairs so conducted as to make it only an adjunct and instrumentality of another corporation...."

The seminal case on the sanctity of the corporate form is *Moline Properties, Inc. v. Comm'r of Internal Revenue*, 319 U.S. 436, 438–439, 63 S.Ct. 1132, 1133–34, 87 L.Ed. 1499 (1943) in which the court explained that,

> The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity.

Nevertheless, the Supreme Court has also made clear that the property of an alter ego or nominee is subject to the collection of the taxpayer's tax liabilities. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977).

█ The first issue to be decided is whether the state law or standard or the federal standard regarding the instrumentality/alter ego doctrine should apply in this case. In *Shades Ridge Holding Co., Inc., v. United States*, 888 F.2d 725 (11th Cir.1989), the Court set out the standard followed in this federal circuit, listing three factors used to determine whether a corporation is a taxpayer's nominee. The three factors the Court found important are (1) the control taxpayer exercises over the nominee and its assets; (2) the use of corporate funds to pay taxpayer's personal expenses; and (3) the family relationship, if any, between the taxpayer and the corporate officers. The Court stated that the issue is one of "who has 'active' or 'substantial' control." In *Shades Ridge*, the court did not rule on whether state or federal law applied to the issue of nominee control, finding in that case that the Alabama and federal standards were so similar that the distinction was not important. The *Shades Ridge* case involved an individual stockholder and a corporation, with the court finding that the corporation was the alter ego of the controlling stockholder. It is clear that *Shades Ridge* is the controlling federal standard.

*Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So.2d 1114 (Fla.1984) is the oft-cited case setting the standard as to when the corporate veil may be pierced in Florida. After a long analysis of the line of cases on piecing the corporate veil in Florida, the Supreme Court made it clear that the corporate veil could not be pierced in Florida absent a showing of improper conduct. The Court explained that there were two lines of cases up to that point, one line requiring a showing of fraud before the shareholders would be liable for corporate debts, and the other line allowing the corporate veil to be pierced utilizing the "alter ego/instrumentality" doctrine, which does not require any showing of wrongdoing. After analyzing the two lines of cases, the Supreme Court overruled the lower court, holding that a showing of improper conduct must be made before the corporate veil can be pierced in Florida. The Court quoted an earlier case, in which it stated, "The rule is that the corporate veil will not be pierced, either at law or in equity, unless it be shown that the corporation was organized or used to mislead creditors or to perpetrate a fraud upon them.... In the absence of pleading and proof that the corporation was organized for an illegal purpose or that its members fraudulently used the corporation as a means of evading liability with respect to a transaction that was, in truth, personal and not corporate" the corporate veil will not be pierced. *Id.* at 1119–1120, *quoting, Riley v. Fatt*, 47 So.2d 769, 773 (Fla.1950).

This Court's reading and interpretation of *Dania Jai–Alai* is that the alter ego/instrumentality doctrine cannot be used in Florida without a showing of improper conduct. Other states seem to distinguish between the doctrine of "piercing the corporate veil" which requires a fraudulent intent on the part of the shareholders to use the corporation for an improper purpose, and the alter ego/instrumentality doctrine which merely requires that the affairs of the two corporations be so intertwined that one may be held liable for the other's debts. This Court's reading of *Dania Jai–Alai* is that the Florida Supreme Court has overruled the use of the instrumentality doctrine alone and that only the "piercing the corporate veil" doctrine may be used in Florida, which has in it a fraud requirement.

Judge Paskay, Chief Bankruptcy Judge of the Middle District of Florida, came to this same conclusion in a case where claimants sought to hold the parent of a subsidiary corporation liable for tortious conduct of the subsidiary. *Hillsborough Holdings Corp. v. The Celotex Corp. (In re Hillsborough Holdings Corp.)*, 166 B.R. 461, 468 (Bankr. M.D.Fla.1994), *aff'd* 176 B.R. 223 (M.D.Fla. 1994). The Court stated, "Florida ... courts disregard the corporate entity in only the most extraordinary cases. Those who seek to pierce the corporate veil ... carry a very heavy burden." The Court found that "there must be persuasive proof of shareholder misconduct before a Court will pierce the corporate veil. The courts of ... Florida ... require proof of deliberate misuse of the corporate form—tantamount to fraud—before they will pierce the corporate veil. Thus, absent proof of fraud or ulterior motive by the shareholder, the corporate veil shall not be pierced." Judge Paskay made the specific finding that no Florida court has held that the corporate veil may be pierced solely on the instrumentality theory, finding, as this Court has, under *Dania* that fraud is required.

In *Hillsborough Holdings*, the Court listed three factors which it stated must be proven by a preponderance of the evidence in order to pierce the corporate veil. They are: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant. *Hillsborough Holdings, supra* at 468, *citing Dania Jai–Alai, supra.*

The Court in *Hillsborough Holdings* expressly found that a federal bankruptcy court must apply the law of the state in which it sits to the issue of piercing the corporate veil, as have a majority of other cases from this and other districts. See *Commonweal, Inc., v. Internal Revenue Service (In re Commonweal, Inc.)*, 171 B.R. 405 (Bankr. M.D.Fla.1994) (Baynes, J.) (holding that with respect to disregard of a corporate entity, a federal court must apply the law of that jurisdiction, *citing Bendix Home Systems, Inc. v. Hurston Enterprises, Inc.*, 566 F.2d 1039 (5th Cir.1978)); *Tato Int'l Corp. v. Dep't. of the Treasury, Internal Revenue Service*, 1989 WL 104789 (S.D.Fla.1989), *aff'd* 907 F.2d 1142 (11th Cir.1990) (holding that Florida law controls the issue of whether a corporation is the alter ego or nominee of an individual).

In *In re Cooper*, 147 B.R. 678 (Bankr. D.N.J.1992) the court explained that although state law ordinarily determines when the corporate veil can be pierced, where however, the rights of the United States under federal programs such as Medicare are involved, federal law provides the standards for piercing the corporate veil. Other courts have held similarly, such as *United States v. Jon–T Chemicals, Inc.*, 768 F.2d 686 (5th Cir.1985) in which the court held that the federal standard applied when an agricultural subsidy program was at issue. However, federal taxes are not considered to be a federal "program" per se, which would invoke this rule.

The court in *In re Arizona Dep't. of Revenue (In re Blanton)*, 105 B.R. 811, 821 (Bankr.W.D.Tex.1989) made a good point when it stated that "determination of whether the corporate veil should be pierced is a determination of the property attributes of

stock ownership and of the relationship between a stockholder/director and his corporation. Such determinations are made by application of state, not federal law." *citing Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

■ This Court agrees with the courts in the above cited cases that Florida law applies in the case at bar. The Florida standard for the disregard of a corporate entity will be utilized. As stated previously, Florida courts require not only a showing that the corporations are alter egos of each other without independent existence, but additionally, that the corporate form was used for an improper, if not, fraudulent purpose.

Applying the law detailed above to the facts of the instant case, the Court will use the factors listed by Judge Paskay in *Hillsborough Holdings* to make the determination as to whether Homelands can be held liable for the tax debts of Caremost. The factors as applied to this case are: (1) Whether Homelands dominated and controlled Caremost to the extent that Caremost's independent existence was in fact non-existent, and that Homelands was in fact the alter ego of Caremost? (2) Whether Homelands' corporate form was used fraudulently or for an improper purpose? and (3) Whether the fraudulent or improper use of Homelands' corporate form caused injury to the IRS?

■ After examining these factors in light of the evidence presented at the hearing, the Court does not believe that the IRS has proven any of the above factors under Florida law.[1] Although it is clear that Homelands and Caremost were related corporations, the Court cannot find that they were, in fact, alter egos of one another. Homelands was obviously set up to be a real estate holding company. Its corporate purpose was to own the property consisting of Van Hook School and Heritage Home. Caremost was set up to be the operating company, which administered the Van Hook School and Heritage Home. It is a legitimate corporate purpose to set up a corporation to be a holding company of the real estate, so that the real estate is indemnified or protected from the business creditors of the operating company. Under the *Moline Properties* case, the test is whether the corporation engaged in sufficient "business activity" to be considered a separate taxable entity. In *Moline* a corporation was formed to protect the investments of the mortgagor's creditors. The corporation engaged in almost no business activity except to hold real estate, which it had sold before the case reached the Courts. The corporation maintained no books or bank account during its existence and owned no other assets other than the real estate. The Supreme Court found that the corporation's mortgaging of the property, the rental of the property and its eventual sale constituted the minimal "business activity" for the corporation to be considered a separate taxable entity. The business activity required under *Moline* and subsequent cases is minimal.

In the case at bar, Homelands held title to the Van Hook School and Heritage Home properties, refinanced the debt on the Van Hook School property with SunBank, granted SunBank a mortgage on the property to secure the loan, leased the property to Caremost and assigned the lease and rent to SunBank. Homelands also delivered a note

1. Even though the Court has concluded that the Florida standard is the proper standard to apply in this case, the Court notes that even utilizing the federal standard regarding the alter ego/instrumentality rule, the Court still does not find that Homelands and Caremost are alter egos of one another. Under the federal *Shades Ridge* standard, the issue is one of who has active or substantial control of the assets of the corporation. In the case at bar, Homelands exercised control over its assets at all times. Homelands held title to the property and leased it to Caremost. Caremost, at no time, exercised any dominion or control over the assets of Homelands. The relationship between Homelands and Caremost was based upon a commercial lease. As stated previously, the factors listed in *Shades Ridge* are: (1) the control taxpayer (Caremost) exercises over the nominee (Homelands) and its assets. The answer to that is none. (2) The use of corporate (Homelands') funds to pay taxpayer's (Caremost's) personal expenses. The answer to that factor is also none. The Court has already established that Homelands had no independent revenue. It had no expenses and no money coming in. Homelands had no money to pay any expenses of Caremost. The final *Shades Ridge* factor regarding family relationship is not relevant to this case. It is evident that even under the less stringent federal standard that does not require proof of fraud, Homelands still cannot be considered the nominee of Caremost.

and mortgage on the Heritage Home property to Ina Perry and leased the property to Caremost. The Court finds that under the *Moline Properties* test this is sufficient business activity for Homelands to be considered a separate taxable entity. Although there was testimony presented that funds were shared between Caremost, Sugar Lakes and Mulholland's personal property, and that corporate formalities were ignored, Homelands did not participate in this. As a real estate holding company, Homelands had no employees or expenses to require funding and had no revenue to contribute. Aside from the testimony that Caremost paid for the expense of producing Homelands' annual report, there was no other evidence presented of any expenses of Homelands being paid by Caremost.

The second factor listed in the *Hillsborough Holdings* case has not been met, namely, Homelands' corporate form was not used for a fraudulent or improper purpose. Under the standard elucidated by the Florida Supreme Court in *Dania Jai–Alai*, fraud must be proven before the corporate veil may be pierced. There was no evidence presented in this case that Homelands was used to perpetuate fraud or for any other improper purpose. There was no evidence presented of the misuse of the corporate form by Caremost. Caremost did not use Homelands to perpetuate a fraud upon the IRS.

Homelands was set up to be a real estate holding company. Its sole corporate purpose was to hold title to the real property. There is nothing fraudulent or improper about setting up real estate holding companies. Under the circumstances, Homelands' creditors should not be obligated to share whatever assets there are in the bankruptcy estate with creditors of other corporations, when Homelands received no benefit from other corporations.

To summarize, the Court finds that Homelands and Caremost were not dominated and controlled by the other, but under the *Moline Properties* business activities test, Homelands carried on sufficient business to be considered a separate taxable entity. Furthermore, there was no evidence of fraud or misuse of the corporate form presented to meet the requirement under the Florida standard. The Court finds that SunBank's Objection to Claim 15 of the IRS should be sustained. A separate final order will be entered in accordance with the foregoing.

### ORDER SUSTAINING SUNBANK'S OBJECTION TO CLAIM 15 OF THE INTERNAL REVENUE SERVICE

This case is before the Court upon an Objection by SunBank to Claim 15 of the Internal Revenue Service. Upon Findings of Fact and Conclusions of Law separately entered, it is

**ORDERED:**

The Objection by SunBank to Claim 15 of the IRS is sustained. Claim 15 of the Internal Revenue Service is disallowed in its entirety.

**DONE AND ORDERED.**