**In the Matter of Leamon Paul McWHORTER, Debtor.**

**DIXIE NATIONAL LIFE INSURANCE COMPANY, etc., Plaintiff–Appellant,**

v.

**Leamon Paul McWHORTER, Debtor; Masie P. Killingsworth; Masie P. Killingsworth, as Administratrix, etc., et al., Defendants–Appellees.**

No. 88–7561.

United States Court of Appeals, Eleventh Circuit.

Nov. 14, 1989.

William A. Robinson and R. Carlton Smyly, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, Ala., for plaintiff-appellant.

Terry McElheny and J. Fred Wood, Dominick, Fletcher, Yeilding, Wood & Lloyd, P.A., Birmingham, Ala., for defendants-appellees.

Before KRAVITCH, JOHNSON and ANDERSON, Circuit Judges.

PER CURIAM:

The issue in this case is whether the district court erred in granting summary judgment based on collateral estoppel on the question whether an insurance company was aware of and ratified the fraudulent actions of one of its agents. We hold that summary judgment was improper in this case and reverse the judgment of the district court.

## I. BACKGROUND

L. Paul McWhorter, the defendant, persuaded many people to buy Dixie National Life Insurance Company ("Dixie") annuities and policies and pay for them by cashing in their policies with other companies. Many of these purchasers sued McWhorter and Dixie for fraud and misrepresentation. *Dominick v. Dixie National Life Insurance Co.,* 809 F.2d 1559 (11th Cir. 1987), fully explains the factual background.

Between 1985 and 1987, eighteen claims of individual purchasers were tried before juries in the Northern District of Alabama. The claims against McWhorter personally were settled before these trials, so the issues before the juries were Dixie's liability by virtue of its approval of McWhorter's actions, and McWhorter's liability to Dixie on Dixie's cross-claims. A special verdict form for each of the eighteen claims was submitted to the juries. One of the questions asked: "Was any such representation [of a material fact by McWhorter to each claimant] made by Paul McWhorter with the approval of Dixie National?" In each case, the jury answered "yes," and found Dixie liable for McWhorter's actions.

McWhorter filed for bankruptcy in April, 1983. Dixie then brought this adversarial proceeding in which it sought compensatory and punitive damages from McWhorter for losses it incurred in investigating, defending, and settling the claims of purchasers *other* than the eighteen who took their cases to trial.[1] Although the individual purchasers were different, Dixie's claims against McWhorter in the present case were the same as its losing claims against McWhorter in the prior litigation. McWhorter answered Dixie's complaint by denying all material allegations and asserting, *inter alia,* that Dixie's claims were "barred by res judicata, collateral estoppel, and/or law of the case." McWhorter based his argument on the jury findings in the eighteen prior cases that Dixie had "ratified, confirmed, or adopted" his conduct.

---

1. This adversary proceeding was transferred to the district court pursuant to order of the bankruptcy court.

In an order and opinion dated August 12, 1988, the district court granted McWhorter's motion for summary judgment, holding that Dixie was collaterally estopped to litigate the issue of Dixie's "approval" of McWhorter's actions by virtue of the verdicts in the other cases. Dixie now appeals.

## II. DISCUSSION

The district court granted summary judgment in favor of McWhorter based solely on collateral estoppel. On appeal, Dixie challenges only the propriety of the application of collateral estoppel to prevent Dixie from denying that it ratified or approved McWhorter's misrepresentations. To invoke collateral estoppel, a party must demonstrate four elements:

(1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*I.A. Durbin, Inc. v. Jefferson National Bank,* 793 F.2d 1541, 1549 (11th Cir.1986).

■ "Whether collateral estoppel is available is a mixed question of law and fact in which the legal issues predominate. The question of its availability is subject to our *de novo* review." *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1519 (9th Cir.1985); *cited with approval in McDonald v. Hillsborough County School Board,* 821 F.2d 1563, 1564 (11th Cir.1987). Therefore, we review the district court's grant of summary judgment *de novo.*

■ McWhorter argues that the application of collateral estoppel is a matter committed to the trial court's discretion. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). The actual decision whether to ap-

ply collateral estoppel undoubtedly involves equitable considerations, *Hercules Carriers v. Claimant State of Florida,* 768 F.2d 1558, 1582 (11th Cir.1985), and is therefore subject to review under an abuse of discretion standard. *Deweese v. Town of Palm Beach,* 688 F.2d 731, 734 (11th Cir.1982). The initial question of whether collateral estoppel is available, however, is a legal question which this court must consider *de novo. Davis & Cox,* 751 F.2d at 1519.

■ The party seeking to invoke collateral estoppel bears the burden of proving that the necessary elements have been satisfied. *Matter of Merrill,* 594 F.2d 1064, 1067 (5th Cir.1979).[2] The sole question in this case is whether the issue of Dixie's approval of McWhorter's actions in the eighteen litigated cases is identical to the issue in this case.

The district court concluded that "[w]hile each annuity sale constituted a separate transaction, the factual setting surrounding the sales raises identical issues as to whether Dixie National knew of McWhorter's misrepresentations during those sales," and thus Dixie was collaterally estopped to litigate the issue of approval in the other cases. Dixie argues that its claims in this action are based on annuity sales not at issue in the prior litigation, that the misrepresentations in the instant case were made at different times and to different persons than the misrepresentations in the previous litigation, and that the prior juries found only that Dixie had ratified and approved the previous eighteen misrepresentations. Thus, Dixie contends, the issue of ratification of the different misrepresentations now before the court is a different issue.

Dixie argues that *Rufenacht v. Iowa Beef Processors,* 656 F.2d 198 (5th Cir. 1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1279, 71 L.Ed.2d 462 (1982), established that transactions which are similar in nature and close in time do not satisfy the identity of issues requirement for application of collateral estoppel. *Rufenacht* held

2. This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

that the identity of issues required to invoke collateral estoppel was lacking in a case where transactions at issue in prior cases were similar in nature and close in time to, but not precisely the same as, the case then before the court.

In *Rufenacht*, the plaintiffs sold cattle to James Heller, who in turn shipped the cattle to the defendant, Iowa Beef Processors. Heller did not pay the sellers for the cattle, so they sued Iowa Beef, claiming that Heller had acted as Iowa Beef's agent in purchasing the cattle from the plaintiffs. In two prior actions against Iowa Beef, other sellers of cattle to Heller also had alleged that Heller had acted as Iowa Beef's agent when buying their cattle. The juries in those cases found against Iowa Beef, necessarily finding that Heller bought the cattle as Iowa Beef's agent.

Based on these prior verdicts, the plaintiff sellers in *Rufenacht* contended that Heller's agency relationship with Iowa Beef was established and that collateral estoppel barred Iowa Beef from litigating that issue. Our predecessor court rejected this argument, stating:

> Collateral estoppel is appropriate only when the identical issue has been fully litigated in a prior case. In each of the lawsuits pertinent to our consideration, plaintiff made or makes the allegation that Heller had an agency relationship with IBP. However, each claim is referable to a separate and distinct cattle transaction. There is no doubt that the transactions involving [the prior plaintiffs and Iowa Beef and the current plaintiffs and Iowa Beef] were similar in nature and close in time. But they were not identical. The fact that Heller acted in a given manner with regard to any given seller does not necessarily dictate that he acted in the selfsame manner with another. Certainly the fact that Heller's actions were such as to allow him to be deemed an agent of IBP in some cases may serve as

the basis of argument in support of the conclusion that he so acted in others. However, the holdings in [the prior cases] are not dispositive of Heller's status [as an agent of Iowa Beef in the transactions currently before the court]. The juries in [the prior cases] made no finding that during any given span of time Heller was acting exclusively as [an] agent of IBP. Those juries were asked to and did determine only Heller's status with regard to the particular transaction before them.

656 F.2d at 202–04 (footnote omitted).

■ In the present case, the district court found *Rufenacht* inapplicable because it involved offensive use of collateral estoppel, while McWhorter seeks to invoke collateral estoppel defensively. In an offensive collateral estoppel case a court must take special care to ensure that the defendant had a full and fair opportunity to litigate the issue in the other proceeding. *Johnson v. United States*, 576 F.2d 606, 617 (5th Cir.1978). Nevertheless, the elements necessary to invoke collateral estoppel are the same whether a party seeks to use it "offensively" or "defensively." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 n. 16, 99 S.Ct. 645, 651 n. 16, 58 L.Ed.2d 552 (1979).[3] Despite the fact that *Rufenacht* involved offensive use of collateral estoppel, we are persuaded by its treatment of whether issues are identical for collateral estoppel purposes. There is no indication in *Rufenacht* that the court addressed the identity of issues requirement differently because the case involved offensive rather than defensive use of collateral estoppel.

■ As in *Rufenacht*, this case arises from transactions that were not at issue in the prior litigation. It is true that juries have found that Dixie was aware of and did approve the misrepresentations to the particular purchasers in each of the previously litigated eighteen claims. Apparently, the

---

3. The cases cited by McWhorter regarding offensive use of collateral estoppel deal with the full and fair opportunity requirement and not the identity of issues requirement. *See Davis v. West Community Hospital*, 786 F.2d 677, 682 (5th Cir.1986) ("Offensive collateral estoppel should be invoked to preclude litigation of an issue only if the party against whom collateral estoppel is urged has had a *full and fair opportunity to litigate* the identical issue in the earlier case.").

misrepresentations at issue now are similar to those in the previous eighteen claims. From this we can conclude that Dixie may well be collaterally estopped from denying that it was aware of and approved similar misrepresentations in the past. However, one further inference of fact is required in order for McWhorter to prevail on the present appeal—i.e., the inference that based on the fact that Dixie knew and approved of similar misrepresentations in the past, it also was aware of and approved the misrepresentation *in each particular claim now before the court.* The previous litigation did not address this additional inference, and thus the issue now before the court is not identical to the previously litigated issue. The juries in the prior cases made no findings regarding Dixie's approval of alleged misrepresentations by McWhorter in connection with sales other than those to the plaintiffs in each of those cases; the trial court instructed the juries to consider each sale to each plaintiff on an individual basis. Because the transactions, although "similar in nature and close in time," did not involve the individual cases at issue here, application of collateral estoppel was improper in this case.

### III. CONCLUSION

The transactions which form the basis of Dixie's action against McWhorter in this case are distinct in time and involve different purchasers from those which resulted in the prior jury findings that Dixie approved McWhorter's conduct. Therefore, the identity of issues requirement of collateral estoppel has not been satisfied in this case.[4] Accordingly, the judgment of the district court is reversed, and the case is remanded for further proceedings.

REVERSED and REMANDED.

---

4. Dixie argues alternatively that the quantum of proof necessary to establish "approval" by Dixie of McWhorter's actions in the prior proceedings by individual annuity purchasers was less than the standard that McWhorter must meet in this action. Because of our conclusion that the transactions at issue in this case do not present the same issue as in the prior cases for collateral estoppel purposes, we do not address Dixie's alternative argument.