## In re Patricia GIORDANO, Debtor.

### Bankruptcy No. 98–33249DAS.

United States Bankruptcy Court,
E.D. Pennsylvania.

June 8, 1999.

Michael G. Louis, MacElree, Harvey, Gallagher, Featherman & Sebastian, Ltd., West Chester, PA, for debtor.

Leslie J. Carson, Jr., Philadelphia, PA, for Huntington Mortgage Co.

Edward Sparkman, Philadelphia, PA, Standing Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

The principal issue presented by the instant objections of a Chapter 13 Debtor to her mortgagee's proof of claim relate to the mortgagee's alleged failure to properly allocate sums paid to the mortgagee from the Debtor's Trustee payments in two previous Chapter 13 bankruptcy cases. We reject the mortgagee's apparent argument that the Debtor's failure to object to its claims in two prior bankruptcy cases binds the Debtor to the instant claim, especially since most of the dispute involves allocation of payments post-dismissal in the im-mediately prior case, which could not possibly have been litigated there. Although we cannot totally accept the allocations proposed by the Debtor, we agree that the mortgagee has failed to present any evidence supporting the propriety of its own allocations or in support of allowance of the components of its claim apart from delinquent payments.

While it is difficult to fix the claim with precision on this record, since we are obliged to do so as best we can, we will reduce the $26,412.30 delinquent payment component of the claim by $12,998.87, the figure which the Debtor asserts was misallocated. The mortgagee's claim for arrears is therefore fixed at $13,413.43.

### B. FACTUAL AND PROCEDURAL HISTORY

PATRICIA F. GIORDANO ("the Debtor") filed the instant individual Chapter 13 bankruptcy case on October 14, 1998. In response to Proof of Claim No. 4 ("the Claim") filed by Huntington Mortgage Company ("the Mortgagee") on November 23, 1998, which claimed arrears of $29,009.47 and a total payoff amount of $43,763.26, the Debtor filed objections thereto ("the Objections") on February 19, 1999. The components of the arrears claimed were as follows:

| | |
|---|---|
| $26,412.30 | 45 payments at $586.94 |
| $102.75 | Accrued late charges to date of filing |
| $125.00 | Legal fees and distributions |
| $47.00 | Inspections |
| $2,115.00 | Foreclosure Costs |
| $207.42 | Other: BPO |
| $29,009.47 | TOTAL ARREARS |

A hearing scheduled on the Objections on March 25, 1999, the date of a continued confirmation hearing and on the Trustee's motion alleging that the amount of the mortgagee's disputed claim rendered the Debtor's plan infeasible, was rescheduled for April 15, 1999, on the Mortgagee's request for a continuance because that witness allegedly missed her flight. On the latter date, that witness was again not

present, but the parties agreed to resolve the Objections by preparing a written Stipulation of Facts to be filed on or before May 6, 1999, and briefs to be submitted on or before May 20, 1999. However, when no Stipulation arrived on May 6, 1999, we entered an Order on that date scheduling a hearing on the Objections for May 13, 1999.

The Mortgagee's witness did not appear at the May 13, 1999, hearing as well. Instead, the parties orally stipulated to certain facts on the record, e.g., that the Debtor had made 100 of the 149 required mortgage payments between June 1986 and October 1998 directly to the Mortgagee; that $4,339.83 was received by the Mortgagee from the Trustee during the Debtor's first case, Bankruptcy No. 92–12461 ("the 1992 Case"), filed on April 23, 1992, and dismissed on January 24, 1995; and the Mortgagee acknowledged receipt of $11,006.80 from the Trustee in the course of Debtor's third case, Bankr. No. 96–13363 ("the 1996 Case")[1] filed on April 15, 1996, and dismissed on July 14, 1998. In addition, the parties stipulated that the Debtor had, on several occasions, made additional payments to cover the Mortgagee's outstanding legal fees and costs, including $923.75 in September 1991; $50 each in October, November, and December 1992; and two payments totaling $610 to prior counsel for the Mortgagee in May and June 1998.

The Debtor was the only witness for either party to testify at the hearing. She stated that, as a past employee of a mortgage company, she was competent to prepare her own allocation schedule for the mortgage payments from its inception to date, which was admitted into evidence. According to this accounting, the Debtor asserted that she was only $13,404.46 in arrears at the time of the filing of her latest bankruptcy case.

The Debtor's aforementioned schedule demonstrated that she assumed that the two lump sums distributed by the Trustee to the Mortgagee from her payments during her two previous bankruptcies should have been allocated to monthly mortgage payments, with appropriate late charges being applied as she calculated. The Debtor also submitted another exhibit which purported to be an analysis of her escrow account from the inception of her mortgage to date, embellishing same with copies of receipts of tax and insurance bills paid by the Debtor totaling $2,408.42, which she claimed were the responsibility of the Mortgagee.

The Mortgagee argued at the hearing that the first Trustee payment of $4,339.83 was properly applied to cover attorney fees of $877.69 and an escrow deficit of $3,462.14. No contentions regarding the allocation of the second Trustee payment of $11,006.80 were offered by the Mortgagee at the hearing. The Mortgagee did note that plans had been confirmed in the 1992 Case and the 1996 Case without the Debtor's asserting any objections to its Proofs of claim in those cases, which were admitted into evidence at the hearing.

In her post-hearing brief, the Debtor argued not only that the Mortgagee had failed to carry its burden of proof in supporting its claims in light of the Objections but also that we should accept her accounts as controlling. She further argued that the Mortgagee failed to prove any components of its claim except the delinquent payments, failed to account for $12,998.87 from the two Trustee payments in the prior Cases, and failed to credit her with the $2,408.42 paid towards taxes and insurance. She ultimately requested that we fix the Mortgagee's arrearages at $10,996.04 and its total claim at $25,812.77.[2]

---

**1.** A second case, Bankr. No. 95–11221, was filed on February 16, 1995, and dismissed on October 17, 1995, apparently without the Debtor's having remitted any payments to the Trustee.

**2.** No calculations for those precise amounts were provided. It seems to us that the Debtor is arguing that $15,407.29 ($12,998.87 plus $2,408.42) should be reduced from the payment component of the Claim for arrearages

The Mortgagee, meanwhile, argues that the confirmation orders in the 1992 and 1996 Cases bound the Debtor to accept the proofs of claim submitted in those two cases and, presumably, in this case as well. It therefore contends that its claims must be sustained in their entirety.

## C. DISCUSSION

### 1. No Developments in the Debtor's Prior Bankruptcy Cases Reasonably Support the Validity of the Claim of the Mortgagee in the Instant Case.

The unarticulated legal theories which the Mortgagee appears to be invoking as its sole support for the validity of the Claim are *res judicata* or collateral estoppel arising from the treatment of its claims in the Debtor's 1992 and 1996 Cases. We begin by noting a procedural difficulty besetting any use of such legal theories, *i.e.*, the principle that *res judicata* and collateral estoppel are affirmative defenses which must be pleaded affirmatively or are deemed waived. *See, e.g., In re Frascatore*, 98 B.R. 710, 718 (Bankr. E.D.Pa.1989). While responsive pleadings to claim objections are not required, they are permissible. Therefore, such a defense can be and should have been articulated in a response. Moreover, the instant Mortgagee never articulated these defenses during the course of the hearing, nor does it even reference them by name in its post-trial submissions. In such circumstances, we conclude that any such defenses are waived.

Secondly, as we indicated in *In re Taylor*, 208 B.R. 828, 832–33 (Bankr. E.D.Pa.1997), there is much to be said for the argument that Chapter 13 plan confirmation orders do not generally have *res judicata* effect. *But see In re Szostek*, 886 F.2d 1405, 1408 (3d Cir.1989). Assuming *arguendo* that they do, it is quite a leap to argue, as does the Mortgagee implicitly, that a confirmation order has *res judicata* or collateral estoppel effect as to all claims filed in that particular Chapter 13 case to which specific objections were not filed.

This argument of the Mortgagee might have some appeal had the Mortgagee established that issues relevant to the instant Claim had already been raised, considered, and decided in the course of either of the Debtor's prior bankruptcy cases. *See In re Brady*, 200 B.R. 178 (Bankr. S.D.Ohio 1996); and *In re Taras*, 136 B.R. 941, 945–46 (Bankr.E.D.Pa.1992). However, since a default judgment may not have collateral estoppel effect, despite its ability to have *res judicata* effect, *see In re Galloway*, 220 B.R. 236, 243 (Bankr.E.D.Pa. 1998), it is difficult to understand how the unlitigated status of the Mortgagee's claim in the Debtor's prior cases could have any possible effect on the determination of the validity of the instant Claim. *Cf. County Fuel Co. v. Equitable Bank Corp.*, 832 F.2d 290, 292 (4th Cir.1987) (failure to object to claim creates no *res judicata* effect). *But cf. Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525, 528–31 (9th Cir.1998) (questioning *County Fuel*). We, in turn, question *Siegel* and believe that *County Fuel's* observations are correct. *Cf. In re Norris*, 39 B.R. 85 (E.D.Pa.1984) (order granting relief from the automatic stay in a prior bankruptcy case is not *res judicata* in a later case).

However, what makes any application of *res judicata* or collateral estoppel impossible here is the observation that this particular Claim has not been static between 1992 and the present. Payments continued to fall due and have been made since the 1992 and 1996 Cases were filed and claims were asserted therein. Thus, the Mortgagee is not arguing that its claim for arrears be fixed at the $5908.33 figure asserted in the 1992 Case, but rather prefers some figure which must be adjusted considerably in light of subsequent developments. In such a setting, it is only collateral estoppel, which does not general-

---

of $26,412.30, and that the arrearages should thus be $11,005.01. As we note at pages 651–

52 *infra*, we deem it inappropriate to delve into the amount of the total claim.

ly arise unless an issue is litigated on its merits, that could be at issue, as to opposed to *res judicata.* Moreover, in applying collateral estoppel, it is extremely difficult to ascertain what issues arising out of the 1992 or 1996 claims could be transplanted here as "decided." Clearly, it was the burden of the Mortgagee to clearly demonstrate its application if it wished to successfully invoke collateral estoppel.

Finally, we observe that it would have been impossible for the parties to have litigated the critical issue of the post-dismissal allocation of the most sizable $11,006.80 1996 Case remittance to the Mortgagee in the context of confirmation and the claims process in the 1996 Case. This allocation occurred only after that Case was dismissed. There is no evidence to support the unlikely prospect that the allocation issue was addressed in that confirmed plan. At best, the Mortgagee is left with a contention that the confirmation and claims process in the 1996 Case created certain collateral estoppel effect with respect to only the $4339.83 refund from the 1992 Case.

However, we decline the invitation of the Mortgagee to ascribe *any* collateral estoppel or *res judicata* effect to the unlitigated confirmation and claims process in either of the Debtor's first two bankruptcy Cases, for all of the reasons stated. Therefore, we reject entirely the Mortgagee's only real defense to the Objections.

2. *The Mortgagee Has Presented Virtually No Evidence of a Right to Allocate the Debtor's Payments to Any Claim Component Other Than Payments Due, Requiring a Substantial Reduction in the Arrears Set Forth in the Claim.*

■■■ In litigation involving objections to proofs of claim, once the objector presents evidence disputing any aspect of the claim, the claimant must prove facts sufficient to support the challenged aspect of the claim. As stated in *Galloway, supra,* 220 B.R. at 243–44,

[u]pon filing an objection, the Debtor bears the burden of going forward and presenting evidence to rebut or cast doubt upon, the creditor's proof of claim. The Debtor's burden is to produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim ... by a preponderance of the evidence.

*See also In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173–74 (3d Cir.1992); and *In re Lewis,* 80 B.R. 39, 40 (Bankr.E.D.Pa.1987).

■■■ Here, the Debtor succeeded in overcoming the Claim's *prima facie* validity. Consequently, the burden shifted back to the Mortgagee to prove the validity of all aspects of the Claim by a preponderance of the evidence. This, it failed to do. The introduction of evidence by the Debtor supporting alternative allocations, while not conclusive, was certainly sufficient to overcome the conclusivity of the disputed Claim.

When we turn to what little evidence could be extracted from the record to see if it could possibly support the Mortgagee's proposed allocation of the two prior Trustee payments, the Mortgagee comes up far short in justifying its Claim. In calculating the Claim at the hearing, the Mortgagee stipulated that the first Trustee payment of $4,339.83 was allocated to attorney fees and the escrow deficit only. However, in its Brief, a new accounting for that payment was offered, namely:

| | |
|---|---|
| $2,662.51 | 4 payments @ $604.43 |
| $1,677.32 | Non-monthly mortgage payment items |

$4,339.83

While no explanation is offered for what constitutes "Non-monthly mortgage payment items," an inspection of the Attachment to the 1992 Proof of Claim would appear to provide an answer:

| | |
|---|---|
| $143.85 | Accrued late fees |
| $1,025.00 | Legal fees and distributions |
| $29.85 | Inspections |
| $291.50 | Foreclosure costs |
| $187.12 | Other: Escrow deficit |

$1,677.32

A similar explanation was offered in the Mortgagee's Brief as to the allocation of the second Trustee payment:

| | |
|---|---|
| $10,598.23 | Non-monthly mortgage |
| $408.57 | (No explanation as to where applied) |

$11,006.80

Again, however, an inspection of the Attachment to the 1996 Proof of Claim again provides insight into what constitutes "Non-monthly mortgage payment items:"

| | |
|---|---|
| $703.65 | Accrued late charges |
| $8,658.58 | Previous foreclosure legal fees |
| $214.00 | Inspections |
| $995.00 | Bankruptcy fees and costs |

$10,598.23

■ When these Attachments are analyzed, it becomes obvious that the Mortgagee has sought to allocate a very substantial portion of the payments from the 1992 Case and (especially) the 1996 Case Trustee payments to legal fees ($10,678.55!) and inspections ($243.85). This court has repeatedly held that, under 11 U.S.C. § 506(b), the attorney's fees allowed to a mortgagee for pre-petition services are generally restricted to $300 for obtaining a foreclosure judgment and $200 for subsequent executions, and that fees for services performed in the bankruptcy court itself are generally not compensable. See, e.g., In re Hornberger, 1998 WL 10365, at *5 (Bankr.E.D.Pa. Jan. 8, 1998); In re Doamaral, 1997 WL 347903 (Bankr. E.D.Pa. June 18, 1997); In re Barrett, 136 B.R. 387, 392–94 (Bankr.E.D.Pa.1992); In re Vitelli, 93 B.R. 889, 894–97, 899–901 (Bankr.E.D.Pa.1988); and In re Nickleberry, 76 B.R. 413, 420–26 (Bankr.E.D.Pa. 1987). The payments of approximately $1700 to the Mortgagee's counsel between 1991 and 1998, see page 4 supra, appear to be more than enough to have compensated the Mortgagee reasonably for such charges. In In re Burwell, 107 B.R. 62, 65–67 (Bankr.E.D.Pa.1989), we held that

any claims of mortgagees for inspection fees were not properly chargeable.·

■ The fundamental legal problem which the Mortgagee faces in assessing any charges in addition to delinquent payments in the instant Claim, as are set forth at page 647 supra, as well as in connection with its prior claims in the other cases, is that the Bankruptcy Code, at 11 U.S.C. § 506(b), only allows a claimant to collect additional fees and costs of any kind which, inter alia, it proves are reasonable. When the claimant offers no basis to evaluate the reasonableness of the fees claimed, the court will allow only those items of costs which the objector admits are reasonable. See Galloway, supra, 220 B.R. at 243–44; and In re McMillan, 182 B.R. 11, 14–15 (Bankr.E.D.Pa.1995). See also In re Olick, 221 B.R. 146, 152–60 (Bankr.E.D.Pa. 1998).

Here, the Debtor vigorously contends that, particularly in light of the additional sums she has paid directly to attorneys, taxing authorities, and insurers over the years on behalf of the Mortgagee, the latter is entitled to no further enhancements to its payments due. Particularly when the Mortgagee itemizes such components as yet $2,115 more foreclosure costs and ·$207.42 for the mysterious and totally unexplained "Other: BPO" charge in its present Claim, and refuses to concede that its prior claims include allocations of over $10,000 towards legal fees, this court is prepared to sustain, in substantial part, the contentions of the Debtor.

■ We do not, however, accept all or even most of the Debtor's affirmative arguments. We do not agree that the Debtor, admittedly not having provided any directives to the Mortgagee regarding allocations of her payments at the times that the Trustee remitted them, can now dictate the allocations as she sees fit. See, e.g., In re Comer, 716 F.2d 168, 175–77 (3d Cir.1983); and In re Lease–A–Fleet, Inc., 131 B.R. 945, 949–52 (Bankr.E.D.Pa.1991), aff'd in pertinent part & rev'd in part on

*other grounds,* 141 B.R. 63 (E.D.Pa.), *aff'd,* 983 F.2d 1051 (3d Cir.1992). We will allow the payment component of Mortgagee's Claim, $26,412.30, adjusted downward by that portion of the Trustee payments from the 1992 and 1996 Cases which the Debtor contends and we agree are chargeable for services which could be upheld on this record as reasonable, *i.e.,* the amount of $12,998.87. We are not prepared to reduce the Mortgagee's Claim by the additional sum of $2,408.42 which the Debtor paid towards taxes and insurance. The record contains no evidence that the Mortgagee charged the Debtor a second time for these payments.

■ We also decline the Debtor's invitation to fix the total amount of the Mortgagee's Claim, in light of the fact that the Debtor's plan contemplates curing arrears. As we noted in *Taras, supra,* 136 B.R. at 949–50, fixing the amount of a secured claim outside of the Chapter 13 plan context appears inconsistent with the principles established in *Dewsnup v. Timm,* 502 U.S. 410, 416–20, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Therefore, we will confine our order to reducing the payment component of the arrears figure set forth in the Claim, *i.e.,* $26,412.30, by $12,998.87, arriving at a net figure of $13,413.43.

## D. CONCLUSION

An order consistent with the within result will be entered.

### ORDER

AND NOW, this 8th day of June, 1999, upon consideration of the record made at a hearing of May 13, 1999, in reference to the Debtor's Objections ("the Objections") to the Proof of Claim No. 4 ("the Claim") of Huntington Mortgage Co. ("the Mortgagee"), it is hereby ORDERED AND DECREED as follows:

1. The Objections are SUSTAINED in substantial part.

2. The Claim for arrears due to the Mortgagee is reduced to $13,413.43.

3. The confirmation hearing in this case remains scheduled on

THURSDAY, JUNE 10, 1999, AT 9:30 A.M. and shall be held in Bankruptcy Courtroom No. 1, Second Floor, 900 Market Street, Philadelphia, PA 19107.

4. If the Debtor's present plan cannot be confirmed in light of this order or for any other reason on that date, the Debtor will be accorded not more than one additional opportunity to achieve confirmation through an amended plan or a request for a continuance, or this case will be dismissed.