**In re Milos TOMASEVIC, Debtor.**

No. 99–14375–8C3.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 25, 2001.

Roy A. Diaz, Ft. Lauderdale, FL, for Wilshire Credit Corporation.

Larry Segal, Tampa, FL, for Washington Mutual Bank, F.A.

Terry Smith, Bradenton, FL, trustee.

## ORDER DETERMINING DEBTOR'S OBJECTION TO CLAIM NO. 3

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

This case came on for final evidentiary hearing on June 1, 2001, of the debtor's objections to Claim No. 3 of Wilshire Credit Corporation[1] ("Wilshire" or

"bank") (Document Nos. 65 and 82). Following a full day's evidentiary hearing, the court requested post-hearing memoranda. Wilshire filed a brief (Document No. 102) on August 1, 2001, and a supplemental brief (Document No. 115) on September 12, 2001. The debtor filed his response to Wilshire's brief (Document No. 105) on August 21, 2001.

This is a confirmed Chapter 13 case. Wilshire holds the second mortgage on the debtor's homestead. The debtor objects to the allowance of Wilshire's claim on several theories and seeks additional damages for the bank's alleged violations of the Real Estate Settlement Procedures Act ("RESPA").[2]

At the hearing, neither the debtor nor Wilshire put on witnesses in support of their positions. Instead, the debtor placed into evidence his exhibits as to his communications with Wilshire. Wilshire relied upon the documents attached to its proof of claim. After considering the exhibits admitted at trial as well as the pleadings and written arguments of the parties, including the authorities cited by the parties, the court determines that the debtor's objection to Wilshire's claim should be largely sustained. The court further determines that the debtor has established that Wilshire has violated the provisions of RESPA but has proved no damages.

### I.

### BACKGROUND

The debtor borrowed $33,500 from Metropolitan Mortgage Company ("Metropoli-

---

1. Wilshire Credit Corporation is the transferee of Metropolitan Mortgage, the original holder of the note and second mortgage upon which the claim is based.

2. The debtor's claim for damages is a set-off claim that is more properly the subject of an adversary proceeding pursuant to F.R.B.P. 7001(1) and F.R.B.P. 3007. The creditor made no objection to the procedural posture of the debtor's set-off claim, however, and the parties joined issue at the June 1, 2001, hearing. *See In re Chapman*, 132 B.R. 132, 144 (Bankr.N.D.Ill.1991) [debtor's failure to file as an adversary proceeding objection to claim that included counterclaims not fatal]. The court will accordingly determine the merits of the disputes in the procedural posture—a contested matter—the parties have framed.

tan") on August 8, 1997, and in return gave to the bank a second mortgage on his homestead. In 1998, Washington Mutual Bank ("Washington Mutual"), the bank holding the purchase money first mortgage on the debtor's homestead, initiated a foreclosure action in state court, Case No. 98–6757CI–SEC 11. Washington Mutual joined Metropolitan as a defendant in that action. Metropolitan then filed a cross-claim against the debtor seeking to foreclose its second mortgage on the debtor's homestead.

Metropolitan obtained a summary judgment of foreclosure on March 17, 1999. The judgment fixed the liability of the debtor to Metropolitan as of February 23, 1999, in the amount of $36,196.68, representing a principal balance of $31,940.51, accrued interest of $1,686.98, and attorney's fees and costs of $2,569. The summary judgment also scheduled a foreclosure sale of the debtor's homestead on April 28, 1999, but the state court later cancelled the sale on the debtor's motion.

The foreclosure action proceeded in a contested posture as between Washington Mutual and the debtor for some months until the state court ultimately entered judgment in favor of Washington Mutual on August 8, 1999. The judgment scheduled a foreclosure sale of the debtor's homestead for September 10, 1999.

On September 2, 1999, the debtor filed a petition under Chapter 13 of the Bankruptcy Code to reorganize his debts and to stay the foreclosure sale. In his Chapter 13 plan (Document No. 2), the debtor proposed to pay the arrearage claim of Washington Mutual without interest over 36 months or the life of the plan. The debtor made no provision in his plan to pay an arrearage claim to Metropolitan (now Wilshire). The debtor instead proposed that Metropolitan (now Wilshire) retain its lien and receive its regular payments outside the plan. The court set January 3, 2000, as the last date to file proofs of claim.

On April 17, 2000,—well after the bar date—Metropolitan filed a proof of secured claim (Claim No. 3) in the amount of $41,994.79 that it claimed was as of April 13, 2000. The proof of claim included specific claims for monies owed on the foreclosure judgment in the amount of $36,196.68, a charge for publication of notice of sale in the amount of $68.18, and $800 in post-judgment attorney's fees. These components of the claim do not, however, add up to the total amount claimed. Metropolitan did not claim a prepetition arrearage.

On May 23, 1999, the debtor sent a letter to Metropolitan (Debtor's Exhibit No. 49) requesting information about the specifics of Metropolitan's proof of secured claim. There is no evidence before the court as to Metropolitan's response to the May 23, 1999, letter, if any.

The court confirmed the debtor's plan (Document No. 27) on June 13, 2000, without objection. The order confirming plan did not provide for the payment of any prepetition arrearages to Metropolitan (now Wilshire). Instead, the confirmation order provided that Metropolitan would be paid outside the plan. The court entered an order allowing and disallowing claims and ordering disbursements (Document No. 37) on August 31, 2000.

The debtor immediately commenced filing a series of motions seeking to put into issue his objections to the claims of Metropolitan and other creditors (Document Nos. 39A, 44, and 48). All of these motions were denied without prejudice by the court for procedural reasons.

In the meantime, Metropolitan sent a notice to the debtor that his loan was being transferred to Wilshire Credit Corporation ("Wilshire") effective October 1, 2000 (Debtor's Exhibit No. 48). This no-

tice was followed by a transfer of servicing notice (Debtor's Exhibit No. 51) that assigned a new loan number and showed a balance of $33,030.63 owing on the loan at the time of transfer.

The debtor immediately sent a letter, dated October 26, 2000, that demanded an explanation for the discrepancy between the amount owing on the loan as reflected on the transfer of servicing notice and the amount owing as reflected in Proof of Claim No. 3. The debtor further stated that his records reflected 37 payments had been made on the loan making the principal balance less than either the transfer of servicing notice or the proof of claim.

Wilshire responded to the debtor by letter dated December 13, 2000 (Debtor's Exhibit No. 55). Wilshire offered no explanation for the discrepancy between its loan accounting and the proof of claim, writing that it "did not receive a breakdown of the claim" from Metropolitan. Wilshire wrote that at the time of transfer, October 1, 2000, the principal balance on the loan was $28,673.80 with a complete balance of $33,030.63. Wilshire also provided to the debtor a statement showing the breakdown of amounts due.[3] Finally, Wilshire reminded the debtor that the state court summary judgment of foreclosure assessed to the debtor attorney's fees and costs. Wilshire's response to the debtor contained the name and telephone number of the person who had written the letter. Wilshire did not affirmatively respond to the debtor's assertion that Metropolitan had failed to credit some of his payments. It is unclear on the evidence before the court whether Wilshire investigated this specific complaint.

Upon receipt of this letter, the debtor sent a second letter, dated January 19, 2001 (Debtor's Exhibit No. 56), that included the debtor's new loan number. In the letter, the debtor asserted that the breakdown of loan payments provided by Wilshire in its December 13, 2000, letter did not reflect credit for payments he made for September and October of 1997 and for October 1999 through November 2000. The debtor also objected to a charge for unpaid interest that appeared on the breakdown because there was no deficiency on the loan and all payments were current. The debtor further objected to the attorney's fees and costs assessed in the foreclosure judgment because that foreclosure judgment was "effectively vacated" by the state court. Finally, the debtor again requested a breakdown of the balance owing on the proof of claim and informed Wilshire that he had filed an objection to that claim.[4]

During this same time period, Wilshire and the debtor also communicated with respect to flood insurance on the debtor's homestead. Sometime in November of 2000, Wilshire sent a letter to the debtor asking for proof of flood insurance and stating its intention to force place such insurance if the debtor did not comply.[5] The debtor responded by letter (Debtor's Exhibit No. 53) objecting to force placed flood insurance and stating that the bank holding the first mortgage had waived its requirement for flood insurance more than three years earlier. On December 7, 2000, Wilshire sent the debtor a notice of its intention to procure force placed flood insurance (Debtor's Exhibit No. 54) due to his failure to show proof of insurance. The notice provided a 15–day period in

---

**3.** Neither the debtor nor Wilshire offered this document into evidence.

**4.** The debtor's objection to Wilshire's claim (Document No. 55) was stricken by the court

(Document No. 56) for improper service on January 24, 2001.

**5.** Neither the debtor nor Wilshire offered this letter into evidence.

which the debtor could avoid the force placed insurance by showing proof of insurance. There is no evidence before the court as to whether Wilshire did force place flood insurance on the debtor's homestead.[6]

Wilshire filed a transfer of claim on January 24, 2001. The clerk gave a notice of transfer (Document No. 61) on February 8, 2001, that established a 20–day time period within which objections to the transfer of claim could be made. The debtor timely objected to the transfer of claim (Document No. 67) reiterating his complaints about Wilshire's imposition of force placed flood insurance and its failure to properly credit his account. The debtor also filed an objection to Wilshire's claim (Document No. 65) on February 13, 2001.

The court conducted a preliminary hearing on April 4, 2001, of the debtor's objection to the transfer of claim and objection to Wilshire's claim. The court overruled the debtor's objection to transfer (Document No. 79) and directed the clerk to transfer Claim No. 3 to Wilshire.[7] The court scheduled the objection to Wilshire's claim for final evidentiary hearing on June 1, 2001. The court stated that, "[f]or procedural purposes, I want the claimants to come to the hearing to present evidence of the amount and validity of their claims .... You have heard on many occasions what Mr. Tomasevic's complaints are and I want those complaints to be addressed." (Document No. 91, transcript of hearing held on April 4, 2001, at 13, lines 23–26, and at 14, lines 1–4).

The debtor filed a second objection to Wilshire's claim (Document No. 82) on May 16, 2001. The May 16, 2001, objection incorporates the issues raised in the debtor's earlier objection to claim (Document No. 65) and raises additional issues.

## II.

### ISSUES

The debtor first argues that Wilshire has made an arithmetic error in totaling the three components of the claim (Document No. 65 ¶ 6). The debtor asserts that the total amount of the claim as presented adds up to only $37,064.86.

Second, the debtor asserts that Wilshire failed to substantiate its post-judgment charges consisting of the publication of sale and post-judgment attorney's fees (Document No. 65 ¶ 8).

Third, the debtor concedes that the total amount of the foreclosure judgment is correct but argues that the judgment was "effectively vacated" as a consequence of an order entered by the state court canceling the foreclosure sale (Document No. 65 ¶ 7). The debtor therefore objects to the imposition of attorney's fees and costs.

Fourth, the debtor argues that the proof of claim is overstated because it fails to credit prepetition payments he has made (Document No. 65 ¶ 9).

Finally, the debtor asserts set off claims for damages under RESPA for Wilshire's imposition of force placed flood insurance (Document No. 85 ¶ 5) and its failure to perform its obligations under that act triggered by the debtor's transmittal of what he alleges were "qualified written requests." (Document No. 82 ¶¶ 3 and 4).

---

6. Although the debtor has made numerous statements in his appearances before the court that Wilshire has force placed flood insurance, he has offered no evidentiary support or sworn testimony in support of those statements.

7. The court orally explained on the record that the transfer met all the requirements of F.R.B.P. 3001(e) and that the debtor's objections went to the merits of the claim and not to its holder.

Wilshire concedes the debtor's first two arguments and states its willingness to amend its claim to include the total judgment amount of $36,196.68, plus interest from February 23, 1999, through the date of filing in the amount of $1,905.57, for a total secured claim in the amount of $38,102.25. Wilshire asserts that this then establishes the debtor's total prepetition indebtedness to Wilshire.

As to the debtor's remaining objections, Wilshire argues that the debtor failed to establish cause to object to Wilshire's claim and therefore the liability established by the proof of claim allowed pursuant to the order confirming plan is *res judicata*. Alternatively, Wilshire argues that the debtor failed to rebut the presumption of the validity of Wilshire's proof of claim and therefore the claim should be allowed as filed. Wilshire contends that the summary judgment of foreclosure is a valid judgment that establishes the debtor's liability.

With respect to the debtor's set-off claims, Wilshire argues that it fully performed all of its obligations under RESPA and is therefore not liable to the debtor.

### III.

### DISCUSSION

### A.

### OBJECTION TO CLAIM

### 1.

*Has the debtor established cause to reconsider post-confirmation Wilshire's claim as allowed in the debtor's confirmed plan?*

■ Wilshire argues that the debtor has failed to establish cause to reconsider Wil-

shire's claim as allowed by the order confirming plan, relying on *In re Gomez,* 250 B.R. 397, 401 (Bankr.M.D.Fla.1999). In that case, the court held that a debtor objecting after confirmation to a claim deemed allowed without objection in a confirmed plan must first establish cause for the claim's reconsideration. *Id.* The court noted, however, that "[s]ubstantial discretion exists in deciding whether to grant a motion to reconsider a claim under § 502(j) [of the Bankruptcy Code]." *Id.*

■ In determining whether cause exists to reconsider an allowed claim, the court must consider several factors, including "(1) the extent and reasonableness of the delay, (2) the prejudice to any party in interest, (3) the effect on efficient court administration, and (4) the moving party's good faith." *Id.*

In this case, the debtor has clearly established sufficient cause to object to Wilshire's claim post-confirmation under all of these factors. To begin with the obvious, the proof of claim itself was untimely filed less than 30 days prior to the confirmation hearing.[8] As a practical matter, the debtor had no viable opportunity to raise his objection to that claim prior to the confirmation hearing. Upon receipt of the proof of claim, the debtor immediately sent a letter to the creditor requesting information and putting the creditor on notice that he questioned the amounts requested in the claim. The debtor subsequently filed a number of motions that made clear his opposition to the proof of claim as filed. In addition, upon the transfer of his account, the debtor corresponded with Wilshire about his questions and concerns

---

**8.** The notice of confirmation hearing (Document No. 19) was mailed to creditors on April 5, 2000, and probably triggered the filing of the proof of Claim No. 3 on April 17, 2000— only 16 days before the confirmation hearing date and well after the January 3, 2000, claims bar date.

about its claim. The debtor has been tenacious in his efforts to effectuate a resolution of his objections to the claim. The delay here is on the creditor's part—not the debtor's.

In addition, Wilshire is not prejudiced by the court's determination of the debtor's objection to its claim post-confirmation. Wilshire has no claim for prepetition arrearages and is not receiving payments under the plan. The debtor instead has simply continued his prepetition practice of paying his monthly installments when they become due. As a consequence, the debtor's post-confirmation objection to Wilshire's claim has caused no interruption to the bank's receipt of monies due under the note.

Nor is the court's administration of the bankruptcy case adversely affected by its determination of the debtor's objection post-confirmation. Indeed, it is a regular practice in this court to determine objections to claims filed in Chapter 13 cases post-confirmation.

Finally, the debtor has demonstrated repeatedly throughout this bankruptcy case his good faith intention to put into issue and resolve his objections to the claims of his creditors.

The court accordingly determines that the debtor has established ample cause to reconsider Wilshire's claim post-confirmation.

### 2.

*Has the debtor rebutted the presumption of the validity of Wilshire's claim?*

In this objection to claim, the court must determine the amount owed by the debtor to Wilshire as of the petition date, including arrearages, if any. The court is not here concerned with the debtor's post-peti-

tion payments to Metropolitan and Wilshire.[9]

■ Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that "[a] proof of claim executed and filed in accordance with [the Federal Rules of Bankruptcy Procedure] shall constitute prima facie evidence of the validity and amount of the claim." The party objecting to the claim has the burden of going forward with equivalent probative evidence to rebut the presumption of validity and amount. *In re Fleming,* 258 B.R. 488, 489 (Bankr.M.D.Fla.2000). Once the objecting party has rebutted the presumption, the claimant has the ultimate burden of proving its claim. *In re Homelands of DeLeon Springs, Inc.,* 190 B.R. 666, 668 (Bankr. M.D.Fla.1995), *citing In re VTN, Inc.,* 69 B.R. 1005, 1008 (Bankr.S.D.Fla.1987).

■ In this case, the court admitted without objection the debtor's evidence as to his loan account with Metropolitan and then Wilshire. The debtor's evidence supported the debtor's contention that he made payments prepetition that were not credited to his loan obligation. The debtor also put into evidence Wilshire's transfer of servicing notice. That transfer of servicing notice establishes a principal balance as of October 1, 2000, that is substantially less than the amount sought by Wilshire in its proof of claim. The court credits this evidence and concludes that the debtor has met his burden of rebutting the presumptive validity and amount of Wilshire's claim. Accordingly, Wilshire bears the burden of persuasion as to the validity and amount of its claim.

■ Wilshire has offered in support of its claim the original loan documents and the summary judgment of foreclosure attached to its proof of claim. Wilshire con-

---

9. The court is required, however, to consider the debtor's post-petition payments in Section B *infra* in determining the debtor's RESPA claims.

tends that the summary judgment of foreclosure establishes the amount and validity of the amounts owed to Wilshire under the doctrine of *res judicata*. The principle of *res judicata* is not helpful in establishing the amount of Wilshire's claim at the time of filing, however, because the state court entered its judgment on March 17, 1999, and the evidence reflects that the debtor made payments on the loan obligation after the date of the judgment. *In re Giordano*, 234 B.R. 645, 649 (Bankr.E.D.Pa. 1999).

■ Instead, the doctrine of collateral estoppel is the appropriate means by which the court can determine the debtor's liability to Wilshire. Under that doctrine, the defendant is precluded from collaterally attacking a fact or issue determined in the prior proceeding if four elements are met.

■ These four elements are:

(1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Dixie National Life Insurance Co. v. McWhorter (In re McWhorter)*, 887 F.2d 1564, 1566 (11th Cir.1989).

In this case, each of these elements is met. The objection to claim deals with the identical issue of the debtor's liability and obligations under the note and mortgage. The state court determined that issue. The court's determination of that issue was a critical and necessary part of the state court summary judgment of foreclosure.

Finally, the debtor had a full and fair opportunity to litigate that issue in the state court proceeding and in fact did so zealously.

Accordingly, the court determines that the debtor is collaterally estopped from disputing the validity and amount of his indebtedness to Wilshire, including attorney's fees and costs, as set forth in the summary judgment of foreclosure. Accordingly, the court concludes that, as of February 23, 1999, the debtor was obligated to Wilshire for $31,940.51 in principal, $1,686.98 in interest, and $2,569 in attorney's fees and costs.

■ The inquiry, however, does not stop there. The summary judgment of foreclosure was entered on March 17, 1999, and contained amounts due to Metropolitan (now Wilshire) as of February 23, 1999. Wilshire is required to establish the amount of its claim as of the petition date, September 2, 1999. Wilshire suggests that this can be easily accomplished by adding an additional $1,905.57 to the judgment amount, representing interest from February 23, 1999, through the date of the bankruptcy filing. Not surprisingly, the debtor vehemently rejects this approach.

■ As the party with the burden of persuasion, Wilshire is required to do more than make mathematical adjustments to its claim as established on February 23, 1999. It must offer evidence of the amount actually owed as of the petition date. This it has failed to do.

On the other hand, the debtor has offered evidence that he made all prepetition payments on his second mortgage loan and was current on the date of the bankruptcy filing. The court admitted the evidence without objection. The court credits that evidence. The evidence is corroborated by the fact that neither Metropolitan nor Wilshire filed a proof of claim asserting an

arrearage on the mortgage to be paid through the Chapter 13 plan. Thus, on the evidence presented, it is apparent that the only default on the second mortgage that led to its foreclosure was the debtor's default under the first mortgage.

On the evidence, the court must therefore find that the debtor was current under the terms of the note and mortgage on his payments of principal and interest as of the petition date. The issue of attorney's fees and costs, however, cannot be determined so easily.

 The debtor has offered no evidence to rebut Wilshire's claim for attorney's fees and costs as determined in the summary judgment of foreclosure. Instead, the debtor argues that the order canceling the foreclosure sale "effectively vacated" the summary judgment of foreclosure and reinstated his loan.

The debtor misconstrues the legal effect of that order. The order, on its face, does nothing more than cancel the scheduled foreclosure sale. It does not vacate the summary judgment of foreclosure. The debtor did not appeal the judgment or file a motion seeking relief from the judgment. The summary judgment of foreclosure is therefore a final adjudication of the foreclosure action between Metropolitan (now Wilshire) and the debtor.

No sale of the debtor's real property has yet occurred. The debtor therefore retains his right of redemption pursuant to Section 45.0315, Florida Statutes. Section 45.0315 provides that the "mortgagor ... may cure the mortgagor's indebtedness and prevent a foreclosure sale by paying the amount of moneys specified in the [foreclosure] judgment ... plus the reasonable expenses of proceeding to foreclosure incurred to the time of tender, including reasonable attorney's fees of the creditor." *See, e.g., Sun First National Bank of Orlando v. R.G.C.*, 348 So.2d 620,

621 (Fla. 4th DCA 1977)[holding that mortgagor had to pay the entire mortgage debt rather than lower successful bid price to redeem].

The Bankruptcy Code, however, provides an alternative to redemption under state law. Section 1322(c) of the Bankruptcy Code permits a debtor to reinstate the debtor's mortgage by curing the default that gave rise to the foreclosure judgment through the plan. 3 L. King, *Collier on Bankruptcy*, ¶ 1322.09[6] (15th ed. rev. 2000). *See, e.g., In re Jaar*, 186 B.R. 148, 150 (Bankr.M.D.Fla.1995)["[A] default in a home mortgage may be cured, and the mortgage reinstated, through a chapter 13 plan, until the residence is sold at a foreclosure sale that is conducted in accordance with nonbankruptcy law."]. This is, of course, the alternative that the debtor here has chosen.

 Had Metropolitan or Wilshire asserted an arrearage claim in its proof of claim, it could have included the attorney's fees and costs assessed in the summary judgment of foreclosure in the arrearage claim. The debtor would then have had to pay those fees and costs through the plan in order to reinstate the mortgage. The problem here, however, is that Metropolitan did not assert a prepetition arrearage claim in any amount. Similarly, the order confirming plan did not provide for the payment to Metropolitan (now Wilshire) of a prepetition arrearage claim through the plan. Wilshire is therefore unable to collect its prepetition attorney's fees and costs from the debtor through the debtor's Chapter 13 bankruptcy case. Upon completion of his plan, the debtor will have reinstated his mortgage with Wilshire under its original terms and conditions, regardless of whether the debtor has satisfied his prepetition obligation to pay attorney's fees and costs to Wilshire.

On the other hand, the debtor remains obligated to Wilshire for $2,569 in prepetition attorney's fees and costs as established in the judgment. Wilshire's claim for attorney's fees will not be discharged under Section 1328 of the Bankruptcy Code because it was (1) not provided for under the plan; (2) not disallowed under Section 502 of the Bankruptcy Code; and (3) not excludable in any event under Section 1322(b)(5) of the Bankruptcy Code. *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1337 n. 8 (11th Cir.2000). This claim will therefore survive the Chapter 13 discharge, if entered, and will continue to accrue interest at the rate applicable to the state court judgment that established it.

For these reasons, the court concludes that Wilshire has failed to establish by a preponderance of the evidence its entitlement to the amount claimed in its proof of claim. The court therefore sustains the debtor's objection to Wilshire's claim.

### B.

### *RESPA CLAIMS*

### 1.

### *Did Wilshire violate RESPA Section 2605(e)?*

RESPA is a remedial consumer protection statute and as such is to be construed liberally. *Rawlings v. Dovenmuehle Mortgage, Inc.*, 64 F.Supp.2d 1156, 1165 (M.D.Ala.1999). The debtor, as the moving party, has the burden of persuasion to show that Wilshire has failed to fulfill its obligations pursuant to Section 2605.

Section 2605(e) of RESPA governs how and when a loan servicer must respond to its borrower's complaints about the servicing of the loan. It provides that:

(e) Duty of loan servicer to respond to borrower inquires

(1) Notice of receipt of inquiry

(A) In general

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

(B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry

Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after receipt from any borrower of any qualified written request under paragraph 91 and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written statement or clarification that includes—

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

The debtor claims that Wilshire violated RESPA's provisions contained in Section 2605(e)(1) and (e)(2) after the filing of his bankruptcy case. The debtor argues that he sent qualified written requests to Wilshire on October 26, 2000, and on January 19, 2001, asserting post-petition failures in his account and that, because Wilshire did not respond appropriately as required by Section 2605(e)(1) and (e)(2), it has committed four violations of RESPA.

The debtor must first establish that his letters written to Wilshire in Octo-ber 2000 and January 2001 are qualified written requests. Each letter included the debtor's name and account number enabling Wilshire to identify with specificity the account at issue. The debtor has therefore satisfied Section 2605(e)(1)(B)(i). Both letters include a statement of the debtor's reasons for his belief that errors existed with respect to his loan account and provide sufficient detail to enable the servicer to investigate the debtor's complaints. The debtor has therefore demonstrated that both letters also satisfied Section 2605(e)(1)(B)(ii). Accordingly, the court concludes that the debtor has established that the October and January letters are qualified written requests within the meaning of Section 2605(e)(1)(B).

The debtor must next establish that Wilshire failed to fulfill its obligations triggered by the receipt of those letters. The debtor first contends that Wilshire failed to acknowledge receipt of either letter within 20 days as required by Section 2605(e)(1)(A). Wilshire does not contravene this contention.[10] The court therefore concludes that the debtor has established that Wilshire has committed two violations of Section 2605(e)(1)(A).

The debtor must next demonstrate that Wilshire failed to comply with Section 2605(e)(2). The debtor contends that Wilshire is in violation of Section 2605(e)(2) because it did not credit to his account payments he made within 60 days of its receipt of the debtor's written qualified requests. Wilshire argues that its December 13, 2000, letter demonstrates that it conducted an investigation as to the validity of the amounts owed and included supporting documentation of its findings in

10. The debtor offered only one letter sent by Wilshire on December 13, 2000, as evidence at trial. Wilshire did not offer any evidence. Wilshire's post-trial arguments set forth in its supplemental post-trial brief (Document No. 115) are consistent with the debtor's evidence.

compliance with Section 2605(e)(2)(B) and (C).

On the record before it, the court cannot determine whether Wilshire fulfilled its obligations under RESPA. It is unclear from Wilshire's letter, for example, whether the bank fully investigated the debtor's assertions that he made 37 payments on the loan or, if it did, what conclusions it reached. The supporting documentation included with the December 13, 2000, letter might shed some light on this issue, but it is not in evidence. Because the debtor has the burden of persuasion on the RESPA claims, it is his obligation to offer evidence in support of his contention that Wilshire failed to comply with Section 2605(e)(2). The debtor has not met his burden with respect to his October 26, 2000, letter. The court therefore determines that Wilshire did not violate Section 2605(e)(2) in connection with its response to this letter.

■ This is not the case, however, with the debtor's letter of January 19, 2001. In that letter, the debtor asserted that the breakdown provided in Wilshire's December 13, 2000, letter failed to credit specific payments he had made. The debtor contended in that letter that he was current in his payments as of November 2000. The court credits that evidence. It is undisputed that Wilshire failed to take any action in response to that letter. Accordingly, the court concludes that the debtor has established by a preponderance of the evidence that Wilshire committed one violation of Section 2605(e)(2) for its failure to take the action contemplated under that section within 60 days of its receipt of the debtor's letter of January 19, 2001.

**2.**
*Did Wilshire violate RESPA*
*Section 2605(b)(3)(G)?*

■ The debtor makes a second RESPA claim against Wilshire pursuant to Section 2605(b)(3)(G). That provision requires that the notice of transfer must state that "the assignment, sale, or transfer of the mortgage loan does not affect any term or condition of the security instruments other than terms directly relating to the servicing of the loan." The debtor contends that Wilshire's demand that he procure flood insurance is a change in the term or condition of the security instruments. Wilshire did not respond to this contention.

The RESPA provision upon which the debtor is relying dictates the contents of the notice that is provided to the mortgagor upon the transfer of the debtor's loan account.[11] The debtor's contention, however, is that Wilshire violated RESPA when it required and force placed the flood insurance. Assuming for the moment that Wilshire did modify the terms of the contract by force placing flood insurance, RESPA does not provide a remedy for a breach of the loan documents. In any case, the debtor has failed to present any evidence that Wilshire did indeed change the terms of the loan. On the record before it, therefore, the court concludes that the debtor has failed to establish a RESPA violation for Wilshire's imposition of force placed flood insurance, if such insurance was in fact imposed on the debtor.

**3.**
*Has the debtor established*
*actual damages?*

■ The debtor has established that Wilshire has committed three RESPA vio-

---

11. The form of Wilshire's transfer notice (Debtor's Exhibit No. 51) clearly complies with the noticing requirements set forth in Section 2605(b)(3). The debtor, therefore, can make no claim for Wilshire's violation of RESPA Section 2605(b)(3).

lations. Pursuant to Section 2605(f), he is therefore entitled to his actual damages for each violation. *Rawlings*, 64 F.Supp.2d at 1163–64. The debtor has the burden of persuasion as to the amount of actual damages he is claiming. *Id.*

■ The debtor has presented a general claim for damages. He does not assert the basis for his claim or delineate the party against whom he asserts the damages (Document No. 109).[12] In that damages claim, the only amount sought that could be applicable to the debtor's RESPA claims against Wilshire is his demand for $56,500 for "2d mortgage payments with present balance" and some portion of the $12,000 for "Insurances, hazard, wind, flood." Apparently, the debtor is simply seeking a return of his payments, with interest, on the second mortgage and on insurance. The debtor has provided no justification, and more importantly, no evidence in support of these requested amounts on any theory of damages.

In short, he has offered no evidence of any damages proximately caused by Wilshire's violations of RESPA. The debtor is therefore not entitled to recover damages for Wilshire's violations.

The debtor has established, however, that Wilshire failed to credit post-petition payments made in payment of amounts due for October through November of 1999 and January through November of 2000. Accordingly, Wilshire must credit these payments to the debtor's loan obligation.

---

12. The court consolidated the final evidentiary hearing of the debtor's objection to the Wilshire claim with the debtor's objection to the claim of the first mortgage holder, Washington Mutual. The debtor has asserted set off claims against both Wilshire and Washington Mutual but does not tie his requested damages to a specific creditor or a particular theory of damages.

## IV.

### *CONCLUSION*

For the reasons stated above, the court has determined that the debtor's objection to Wilshire's claim should be sustained. In addition, the court has determined that the debtor has established that Wilshire committed three violations under RESPA but failed to establish any actual damages for those violations other than Wilshire's failure to properly credit his account.

Accordingly, the court orders as follows:

1. The debtor's objection to Claim No. 3 is sustained. As of September 2, 1999, Wilshire shall have an allowed secured claim in the amount that would be due under the original terms of the loan according to the original amortization of the loan according to the loan documents. The debtor shall be credited with making all payments timely when due through and including the payment due on September 1, 1999. This claim is allowed in this bankruptcy case but is neither provided for nor to be paid through the plan. Wilshire shall retain its mortgage lien.

2. As of September 2, 1999, Wilshire shall also have a secured claim in the amount of $2,569 for prepetition attorney's fees and costs. Wilshire is entitled to interest on the claim at the rate applicable to the judgment of foreclosure entered on March 17, 1999, from February 23, 1999, to the date paid. This claim is allowed in this bankruptcy case but is neither provided for nor to be paid through the plan. It shall therefore survive any discharge entered in this bankruptcy case. Wilshire shall retain its judgment lien for this

amount until paid notwithstanding the fact that the mortgage shall be cured and reinstated upon the completion of the debtor's plan.

3. Wilshire is further directed to provide an accounting to the debtor of his mortgage loan that credits the debtor's account as paid timely up to and through November 1, 2000, and that further reflects any and all payments received after that date and through the date of the entry of this order.

4. Wilshire shall also promptly provide to the debtor a current amortization schedule consistent with the terms of this order.

5. The debtor's objection to claim, including his claim for damages for RESPA violations, is otherwise overruled.